INDUSTRIAL UNION DEPARTMENT, AFL–CIO, et al., Petitioners,

v.

Dr. Eula BINGHAM, Assistant Secretary of Labor, et al., Respondents.

The AMERICAN PETROLEUM INSTITUTE, the National Petroleum Refiners Association on behalf of their Respective Members and American Petrofina, Incorporated, et al., Petitioners

v.

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, United States Department of Labor, Dr. Eula Bingham, Assistant Secretary of Labor, and Ray Marshall, Secretary of Labor, Respondents,

Manufacturing Chemists Association, American Iron and Steel Institute, Independent Petroleum Association of America, Industrial Union Dept., AFL–CIO and United Rubber Workers, AFL–CIO, Intervenors.

Nos. 77–1395 and 77–1516.

United States Court of Appeals, District of Columbia Circuit.

Decided Oct. 17, 1977.

Opinions Filed Dec. 7, 1977.

ON MOTION TO RETRANSFER CASE.

Edward W. Warren, Robert F. VanVoorhees, Washington, D.C., and Arthur F. Sampson, III, Falls Church, Va., were on the motion to retransfer for petitioners in No. 77–1516.

George H. Cohen, Washington, D.C., entered an appearance for petitioners in No. 77–1395 and intervenors Industrial Union Dept., AFL–CIO and United Rubber Workers, AFL–CIO, in No. 77–1516.

Jeremiah C. Collins, Washington, D.C., also entered an appearance for petitioners in No. 77–1395.

Nancy L. Southard and Michael H. Levin, Washington, D.C., were on the Opposition filed by respondent, Secretary of Labor to the motion to retransfer in No. 77–1516. They also entered appearances for respondent in No. 77–1395.

Harold B. Scoggins, Jr., Oklahoma City, Okl., was on the memorandum in support of motion to retransfer filed by intervenor Independent Petroleum Ass'n of America in No. 77–1516.

Robert P. Stranahan, Jr., Washington, D.C., was on the response to the motion to retransfer filed by intervenor American Iron and Steel Institute in No. 77–1516.

John H. Pickering, Washington, D.C., entered an appearance for intervenor Manufacturing Chemists Ass'n in No. 77–1516.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and WILKEY, Circuit Judges.

Opinion PER CURIAM.

Opinion supporting jurisdiction and transfer, filed by LEVENTHAL, Circuit Judge.

Opinion supporting transfer for lack of jurisdiction, filed by WILKEY, Circuit Judge.

Opinion supporting jurisdiction and dissenting from the order of transfer, filed by FAHY, Senior Circuit Judge.

PER CURIAM:

The question at hand is whether the District of Columbia Circuit or the Fifth Circuit should consider and dispose of petitions for review of an order of the Secretary of Labor setting an emergency temporary standard for occupational exposure to benzene under the Occupational Safety and Health Act.

On April 29, 1977, the Industrial Union Dept., AFL–CIO, filed a petition in the District of Columbia Circuit. On May 10 and 19, other parties filed petitions in the Fifth Circuit. On June 7, the Fifth Circuit transferred the matter to this court for "a determination of the validity of the Union's petition." In due course this court had before it a motion to dismiss the Union's petition for review as untimely, and a motion to order a retransfer to the Fifth Circuit of the proceedings it had transferred.

On October 17, 1977, in response to a motion of the Secretary of Labor for an immediate decision, the court issued an order of transfer to the Fifth Circuit of all petitions for review now pending in this court.

The court now announces its reasons as follows: (1) Judges Fahy and Leventhal agree that the court has jurisdiction of the petition filed by the AFL–CIO. Judge Wilkey, dissenting in this respect, is of the view that this petition is premature and should be dismissed for lack of jurisdiction. Therefore the motion to dismiss the Union's petition for review, on grounds of prematurity and lack of jurisdiction, is denied.

(2) Judge Leventhal is of the view that the petition of the AFL–CIO should be transferred to the Fifth Circuit pursuant to the last sentence of 28 U.S.C. § 2112(a).

Judge Fahy is of the contrary view, concluding that a transfer to the Fifth Circuit is not authorized by § 2112(a), properly applied. In order to avoid an impasse, Judge Wilkey votes that—on the assumption, as determined by the majority, that the court has jurisdiction—the court should exercise its transfer authority, under § 2112(a), to transfer the case to the Fifth Circuit. He therefore concurs in the result proposed by Judge Leventhal.

Judge Fahy dissents from the order of transfer.

The judges have prepared separate opinions in support of their views.

LEVENTHAL, Circuit Judge:

These consolidated proceedings for review of a standard promulgated by the Occupational Safety and Health Administration (OSHA) are now before us on a motion for transfer to the Fifth Circuit pursuant to 28 U.S.C. § 2112(a).

I

Disposition of this motion requires rather detailed exposition of the procedural history of these cases.

On April 28, 1977, representatives of approximately twelve organizations were invited to a meeting the following morning in the office of Dr. Eula Bingham, Assistant Secretary of Labor (OSHA). The meeting began shortly after 9:30 a.m. and concluded about 10:00 a.m. At the meeting, Dr. Bingham signed an emergency temporary standard regulating occupational exposure to benzene.[1] She described the standard to those present, and answered their questions

about it. The evidence is in conflict whether copies of the text of the standard were made available to those present.

Those invited to the meeting represented a cross-section of organizations with an interest in the benzene standards, including: the American Petroleum Institute, the Chamber of Commerce of the United States, the Manufacturing Chemists Association, the National Association of Manufacturers, the Rubber Manufacturers of America, the Organization Resources Counselors, Inc., the Industrial Union Department of the AFL–CIO (hereafter simply "AFL–CIO"), the United Rubber Workers of America, the United Steelworkers of America, the United Auto Workers, and the Health Research Group.

The representative of the AFL–CIO immediately after leaving the meeting with Dr. Bingham prepared a petition for review of the standard. The petition was received in the office of the Clerk of this court at 10:08 a.m. on April 29. It was assigned docket number 77–1395.[2]

At 10:30 a.m., April 29, Dr. Bingham and F. Ray Marshall, Secretary of Labor, held a press conference at which they discussed the issuance of the benzene standard. At the conclusion of the press conference, copies of the text of the standard and a statement describing it were made available to those in attendance. The printed statement indicated on its face that it was for release at 10:30 a.m.

The standard was filed with the Federal Register at 10:55 a.m. on April 29. It was published in the Federal Register for May 3, 1977.

---

1. OSHA is given power to promulgate emergency temporary standards by 29 U.S.C. § 655(c)(1). It acted on the basis of medical research which indicated that occupational exposure to benzene could cause leukemia. Benzene is a byproduct of the petroleum refining, petrochemical, and steel industries, and is principally used as a solvent in a wide range of industries, including the manufacture of rubber products.

The standard, 29 C.F.R. § 1910.1028, and supporting material appear at 42 Fed.Reg. 22516–29 (May 3, 1977). It has been amended

twice, 42 Fed.Reg. 23601 (May 10, 1977), and 42 Fed.Reg. 26429 (May 24, 1977).

2. The statute providing for review, 29 U.S.C. § 655(f), provides in pertinent part as follows:

(f) Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

On May 10, the American Petroleum Institute (API), the National Petroleum Refiners Association, and ten oil companies (hereafter collectively the "petroleum industry petitioners") filed a petition for review of the benzene standard with the Court of Appeals for the Fifth Circuit in New Orleans, Louisiana. On May 20, the day before the standard was to take effect, Judge Morgan of that court granted an interim stay of its effectiveness. On June 7, a three-judge division of that court transferred that proceeding to this circuit pursuant to 28 U.S.C. § 2112(a).[3] They extended the stay pending the action of this court. The stay remains in effect.

The petition filed by the American Petroleum Institute, et al., was assigned docket number 77–1516 in this court and was consolidated with the review proceeding filed by the AFL–CIO. The petroleum industry petitioners have now moved for retransfer to the Fifth Circuit. A number of other motions are also pending, but in view of our decision to grant the transfer, we will leave them for determination by the Fifth Circuit.

## II

■ Initially, we must consider our jurisdiction over the AFL–CIO's petition. Section 2112(a) provides for the transfer of multiple review proceedings to the circuit in which a petition was first filed, but if the AFL–CIO's petition is invalid, our jurisdiction was not validly invoked and we are not the court of first filing even though the AFL–CIO's petition here was earlier in time than the petition in the Fifth Circuit. The issue is whether the AFL–CIO filed prematurely, since it filed before the press conference at which the benzene standard was made known to the general public. We have concluded that disclosure to the general public is not necessary to make agency action ripe for judicial review.[4]

In *Saturn Airways, Inc. v. CAB,* 155 U.S. App.D.C. 151, 153, 476 F.2d 907, 909 (1973), we held that a petition was not premature when "at the time of filing it was clear both that the Board had taken what it deemed official action and that the substance of that action had been communicated to the public in some detail." The petitions at issue in *Saturn* had been filed after the agency adopted regulations and issued a press release describing the regulations "in some detail," (*id.*) but before the text of the regulations had been released. In the instant case, the AFL–CIO's petition was filed before the agency either held a press conference or issued a press release. Nevertheless, it was filed after the agency "had taken what it deemed official action" (*id.*)—Dr. Bingham's signing the standard—and after the substance of that action had been communicated to a fairly representative cross-section of the interested public.

Neither the instant case nor *Saturn* concerns the rather different situation in which a petition is filed *before* the agency has actually taken its official action. One may not seek or obtain judicial review of a merely anticipated agency action, even if the agency has made public its intention to take

---

**3.** The pertinent portions of this statute read:

If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

**4.** The Courts of Appeals which have considered the question are in general agreement that under § 2112(a), the court of first filing should determine the validity of the petition filed in that court. *See Abourezk v. FPC,* 168 U.S. App.D.C. 246, 513 F.2d 504 (1975); *Chatham Manufacturing Co. v. NLRB,* 404 F.2d 1116 (4th Cir. 1968). The Fifth Circuit apparently adopted that interpretation of the statute in transferring its petition here, rather than determining for itself whether the AFL–CIO's first-filed petition in this circuit was valid. If the court of first filing determines that its petition is invalid, it then dismisses that petition and transfers all remaining petitions to the circuit in which a petition was next filed.

a specific action in the near future.[5] This principle also compels rejection of the AFL–CIO's argument that even if its petition was invalid when it was filed, it became valid automatically at 10:30 a.m. when the standard was made public.

Nor are we concerned here with secret agency action, in which the agency's decision is not communicated to anyone outside the agency. The Supreme Court has made clear that "[k]nowledge of the substance must to some extent be made manifest" in order for the agency's decision to be "issued," for substantive rights to be defined, and for the time for seeking review to begin to run. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 676, 70 S.Ct. 876, 881, 94 L.Ed. 1194 (1950). A valid petition for review could not have been filed before the press conference if Dr. Bingham had signed the standard alone in her office, or only in the presence of an aide, and not held the invitational briefing.[6]

■ We recognize that advance disclosure of agency action to selected individuals or groups is likely to present difficulties. No matter how conscientious and careful an agency is in selecting those to be invited to a briefing, it is likely that some interested parties will not be represented. It might be concluded that a regulation or standard is issued for purposes of judicial review only when its text is made available to the public at large, on the ground that such a rule would insure a fair and even start for the race to the courthouse. But so interpreting the statutes would not bar the agency from discussing proposed or anticipated action with invited groups in advance of the vote or signature which makes it official agency action. Those participating in such discussions would have an advantage in preparing petitions for review and filing them quickly once the public announcement was made. It is not part of our judicial function, nor do we have any inclination, to dictate to agencies how they may or may not promulgate their actions. Agencies are vested with considerable discretion in such matters. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 676, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).[7] We should give deference to the agency's choice, if it is reasonable. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Brennan v. Occupational Safety & Health Comm'n,* 513 F.2d 553, 554 (10th Cir. 1975).

---

5. On December 20, 1976, we dismissed *sua sponte* two petitions for review of an opinion of the Federal Power Commission on the ground that the petitions were filed before the Commission's opinion was entered. *American Public Gas Ass'n v. FPC,* Nos. 76–1998 & 76–1999.

6. This does not mean that the standard would have become a nullity if Dr. Bingham had resigned or died before the public announcement was made. *Braniff Airways v. CAB,* 126 U.S. App.D.C. 399, 405, 379 F.2d 453, 459 (1967). *Braniff,* concerning the validity *vel non* of an order, implicates somewhat different considerations, and is of little value in deciding the question before us.

   In *Microwave Communications, Inc. v. FCC,* 169 U.S.App.D.C. 154, 515 F.2d 385 (1974), we held that the period for seeking review of an FCC order began only when its full text was made available, not on the earlier date when a press release summarizing the decision was released. We were there faced with a petition filed near the end of the statutory period, which would have been untimely had the earlier date been used. The press release there was of such a summary character that we stated that "[w]e cannot envision how preparation of a petition for review conforming to statutory requirements could responsibly be undertaken simply on the basis of such a report." 169 U.S.App.D.C. at 160, 515 F.2d at 391. The case is therefore factually distinguishable from *Saturn* and the instant case, in which fairly complete descriptions of the substance of the agency action were made public in advance of its full text. Moreover, the statute under which review was sought in *Microwave* required that a statement of the reasons on which the appellant intended to rely also be filed. Hence the need for a complete statement of the agency decision was greater there.

7. In *Skelly,* the Supreme Court said:

   Of course, the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been "issued." Section 16 of the Act provides that "Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe." But surely a certificate cannot be said to have been issued for purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest. . . .

We would have a substantially different case if OSHA had invited, for example, only representatives of organized labor, or only representatives of industry, to the briefing by Dr. Bingham. Nothing in the record contravenes the prima facie impression that OSHA made a good-faith effort to invite representatives of a cross-section of the groups with an interest in the benzene standards.[8]

Invitational advance disclosure presents the danger of prejudice to those not privy to the disclosure, but this problem is better addressed by an examination of the circumstances of each case than by an ironclad jurisdictional rule. To illustrate, suppose all interested parties filed their petitions for review of an agency action in this court after an invitational briefing but before disclosure to the general public. Further assume that the sixty-day period for filing provided in 29 U.S.C. § 655(f) elapsed, with no other parties filing petitions for review or in any way manifesting the desire to do so. The agency now moves to dismiss all petitions for review on the ground that this court is without jurisdiction because they were prematurely filed. Would this court be devoid of jurisdiction, and required to grant the motion to dismiss? Since the period for seeking review has now expired, the merits of the agency action would evade review entirely, despite the good-faith ef-

forts of all interested parties to seek prompt review. In the absence of a substantial possibility of prejudice to any party, that harsh result would not be justified.

It bears emphasis that the entire dispute now before the court could have been avoided had OSHA established and followed regulations defining the process of issuing and promulgating standards. In recent years, we have often seen multiple review petitions filed within hours or minutes of a major agency action. We deplore such hasty filing.[9] But while it exists as a fact or a potential, it appears incumbent upon agencies to make an effort to deal with the problem. The judicial review section of the OSHA act, 29 U.S.C. § 655(f), speaks of standards being "issued" and "promulgated" in defining the time within which review must be sought. Under *Skelly, supra,* OSHA has some latitude to prescribe how standards are issued and promulgated. But we are aware of no OSHA regulation defining either term.[10]

The existence of such a regulation, making clear exactly what constitutes the issuance or promulgation of a standard, and providing that from and after that event all interested persons may have access to the text of the standard, would permit more expeditious review of OSHA actions without the lengthy and complex wrangling

8. There is no intention to suggest or condone, for example, ex parte contacts between quasi-judicial regulatory bodies and litigants, or *sub rosa* "leaks" of impending agency decisions to particularly favored persons or interests.

9. In *Saturn, supra,* we voiced our disapproval of instantaneous petitions for review filed without proper reflection. 155 U.S.App.D.C. at 154, 476 F.2d at 910. We do so again, without implying that the AFL–CIO is engaged in anything other than a good faith effort to obtain review of a decision with parts of which it disagrees. In some recent cases before us, the interval between the filings in different cities has been measured in seconds. *American Public Gas Ass'n v. FPC,* 180 U.S.App.D.C. 380, 555 F.2d 852 (1976); *Environmental Defense Fund v. EPA,* No. 77–1001 (filed Jan. 3, 1977; voluntarily dismissed June 17, 1977). *See also* the cases cited in note 4 *supra.* To the extent that the choice of forum is based on the parties' perception of the decision they are likely to receive on the merits, the liberal venue provi-

sions of 29 U.S.C. § 655(f) and similar review statutes and the "first filing" requirement of section 2112(a) combine to produce a rather unseemly spectacle. *See generally American Public Gas, supra.*

10. Section 1911.18(a)(1) of 29 C.F.R., relating to notice-and-comment rulemaking by OSHA, states that "the Assistant Secretary shall publish in the Federal Register . . . an appropriate rule promulgating . . . a standard." The section relating to emergency standards, on which advance public comment is not solicited, contains no comparable language. 29 C.F.R. § 1911.12.

Publication in the Federal Register often, as here, occurs several days after the text of a rule or standard is made public. I question whether a rule which forbade petitions for review until the standard appeared in the Federal Register would be workable or desirable.

over jurisdiction and venue which we have seen in this case.[11] As noted above, such a regulation is not necessarily inconsistent with advance disclosure of actions the agency anticipates taking, to representatives of those groups believed to be most affected. Such groups could then begin to prepare petitions for review, but no petition could be filed until the regulation was issued and its substance thereby made known to the public at large. See page —— of 187 U.S. App.D.C., page 968 of 570 F.2d, *supra.*

In the context of this case, we hold that we do not lack jurisdiction over a petition for review filed after an agency takes action and the petitioner becomes aware of the substance of that action, even if the action is disclosed to the general public only after the petition has been filed. A person with actual notice is bound by an agency action, even if the act which imparts constructive notice to others—filing with the Federal Register for publication—has not yet occurred.[12] We have jurisdiction over the petition filed by the AFL–CIO, and we are the court of first filing within the meaning of 28 U.S.C. § 2112(a).

### III

This does not end our inquiry, however. The last sentence of section 2112(a) provides that "[f]or the convenience of the parties in the interest of justice such court [of first filing] may thereafter transfer all the proceedings with respect to such [agency] order to any other court of appeals." For the reasons expressed in this section, I would vote to exercise our discretion to transfer these consolidated proceedings to the Fifth Circuit in the interest of justice.

Looking first to the convenience of the parties, I believe that this circuit would be a more convenient forum than the Fifth Circuit. All parties have counsel and other representatives in Washington who represent their clients' interests before Congress and the agencies of the executive branch, including OSHA. I do not doubt that it would be significantly more convenient for OSHA and the AFL–CIO, both of which have their headquarters in Washington, to litigate the validity of this standard of nationwide application in this circuit rather than in the Fifth. Indeed, our discussion in *American Public Gas Ass'n v. FPC*, 180 U.S.App.D.C. 380, 385, 555 F.2d 852, 857 (1976), on the convenience of venue in the District of Columbia will apply to nearly all cases in which national organizations, corporations, or institutions challenge agency action of nationwide scope.

*American Public Gas* did not, however, state a rule that all venue conflicts in review proceedings are to be resolved in favor of this circuit. Such a rule would ignore the Congressional intent that we are to consider "the interest of justice" in deciding whether to make a discretionary transfer of review proceedings, and the liberal venue provisions of 29 U.S.C. § 655(f) and other similar review statutes. I think it a fair construction of the statute that the court was intended to take into account all pertinent elements of the interests of justice and judicial administration, and was not limited to a consideration of the interests of the parties.[13] Supportive of this construction of § 2112(a) is the generally accepted construc-

---

11. We relied on such a rule in *Medical Committee for Human Rights v. SEC*, 139 U.S.App.D.C. 226, 231–32, 432 F.2d 659, 664–65 (1970), *vacated as moot*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). We held that where the statute provided that petitions for review must be filed within sixty days after "entry" of the order, and the SEC's rules required that each order shall be available for public inspection "from and after the date of entry," the time for seeking review did not begin to run when the parties were notified of the Commission's decision by telephone.

12. *Kessler v. FCC*, 117 U.S.App.D.C. 130, 147, 326 F.2d 673, 690 (1963).

13. In *American Public Gas*, the court said (180 U.S.App.D.C. at 385, 555 F.2d at 857): "[I]t is our conclusion that the convenience of the parties is furthered by retention of these cases in the District of Columbia Circuit, and that there are no offsetting considerations in the interest of justice to warrant transfer." *Accord, Abourezk v. FPC*, 168 U.S.App.D.C. 246, 247 n.1, 513 F.2d 504, 505 n.1 (1975) (Bazelon, C. J., concurring).

tion of virtually identical language of 28 U.S.C. § 1404(a), governing transfer of civil cases in the District Courts, "[f]or the convenience of parties and witnesses, in the interest of justice." [14]

While representatives of a cross-section of organizations concerned with the benzene standard were invited to Dr. Bingham's briefing, the record reveals that several of the Fifth Circuit petitioners neither were invited to send a representative nor were they members of any organization which was represented. It is quite likely that these parties did not learn of the benzene standard until after the AFL–CIO's petition had been docketed in this court.

It would not be sound to undertake an inquiry whether or to what extent a particular petitioner was "prejudiced" by being unable even to give consideration, after public disclosure of the issuance of the order, as to the circuit of convenience for conducting the review.[15] The cause of efficient judicial administration would not be well served by probing such a complex factual issue as actual prejudice in order to decide the proper venue for an appellate argument and disposition. What the court can fairly say is that the statute contemplated that each person affected would have at least a theoretical opportunity to make that choice, if he acted timely, and that in this case some petitioners were denied that choice. Certainly, it is in the interest of justice that justice appear to be done.[16] When a court of first filing of a petition for review materializes before even the substance of the agency decision is disclosed to the public at large, the appearance of justice is brought into serious question.

■ As a simplifying rule of administration, I am of the view that in general a case should be transferred to the circuit in which the first petition was filed subsequent to the disclosure of the agency decision to the general public. This would be subject to the possibility that in any particular case the court would be of the view that the interest of justice was furthered by retention or review in another circuit.

Applying that standard in the instant case, I am of the view that there is no dominating reason in the interest of justice for retention of the proceeding in the District of Columbia Circuit, that the movants have established that they were not given

Reference may also be made to the line of cases stating that a court of appeals has inherent power to transfer cases to other circuits in the interest of justice. *Eastern Airlines, Inc. v. CAB*, 122 U.S.App.D.C. 375, 378, 354 F.2d 507, 510 (1965); *Pacific Gas & Electric Co. v. FPC*, 106 U.S.App.D.C. 281, 272 F.2d 510 (1958); *AT&T v. FCC*, 519 F.2d 322, 325 (2d Cir. 1975) (citing cases from other circuits). This power must be exercised sparingly, but its existence militates against a restrictive reading of § 2112(a).

*Ball v. NLRB*, 299 F.2d 683 (4th Cir.), *cert. denied*, 369 U.S. 838, 82 S.Ct. 868, 7 L.Ed.2d 843 (1962), was addressed to determination of the court of first filing. It does not consider the question of the basis on which that court may transfer elsewhere in the interest of justice.

**14.** Thus, Justice Goldberg noted in *Van Dusen v. Barrack*, 376 U.S. 612, 643, 84 S.Ct. 805, 823, 11 L.Ed.2d 945 (1964), that "judicial familiarity with the governing laws"—a factor obviously different from the convenience of the parties and witnesses—was relevant to the decision whether the interests of justice would be furthered by a transfer. *See also, e. g., General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 368 (4th Cir.), *cert. denied*, 386 U.S. 960, 87

S.Ct. 1031, 18 L.Ed.2d 109 (1967); *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F.Supp. 52, 55 (D.Del.1975) ("Central to efficient and effective judicial administration is a policy, implied in section 1404(a), of proper conservation and utilization of judicial resources.").

**15.** The AFL–CIO argues that the Fifth Circuit petitioners were not prejudiced by the AFL–CIO's alleged 22-minute premature filing, because they did not file in the Fifth Circuit until eleven days thereafter. However, once the petroleum industry petitioners learned that the AFL–CIO's petition was on file in this court, there was no legal significance to a filing earlier or later within the 60-day period. No such filing could be a "first filing" for the purposes of § 2112(a).

In a kind of mirror contention, the petroleum industry petitioners argue that the AFL–CIO could have protected its position as the first to file, and eliminated the prematurity problem, by docketing a second petition with this court at any time after OSHA released the standard to the press and public. We have no need to appraise or weigh this contention.

**16.** *See Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed.11 (1954) (Frankfurter, J.).

an opportunity to make any determination of the convenient forum after the decision was made known to the public, and that this opportunity was denied them because of the advance disclosure of the benzene standard to an invited group and the action of the AFL–CIO in filing its petition for review prior to disclosure to the public.[17]

The motion for transfer is granted, and the other pending motions in these cases will be transmitted to the Fifth Circuit for its consideration.

WILKEY, Circuit Judge:

While Judge Leventhal and I agree on the resulting transfer, on the important basic point in this case I would hold that, for purposes of judicial review, an order of the Occupational Safety and Health Administration is not "issued" before its substance is *communicated to the general public* in one manner or another. Any petition filed prior to such communication is premature. Therefore, the court in which the premature proceeding was launched cannot be deemed the court of first filing under 28 U.S.C. § 2112(a), which provides that when an order is attacked in two or more circuit courts of appeal, the case must be heard in the circuit in which a proceeding was first instituted.

The basic chronology of events is not in dispute. On 28 April 1977 a representative of the Assistant Secretary of Labor, Occupational Safety and Health Administration (OSHA), by telephone, invited approximately a dozen people representing employees, employers, and public interest groups to a gathering at her office at 9:30 a. m. on 29 April 1977 for an unspecified purpose. At that invitational gathering, she announced and signed an emergency temporary standard (ETS) regulating occupational exposure to benzene, a petroleum by-product which is believed to cause leukemia.[1] A few minutes later, at 10:08 a. m., the Industrial Union Department, AFL–CIO, and the United Rubber Workers of America, AFL–CIO, filed a petition for review of the standard in this court. At approximately 10:40 a. m., the Assistant Secretary, together with the Secretary of Labor, held a press conference, after which copies of the standard and news releases were distributed.[2] More than a week later on 10 May 1977 several industry groups, including the

---

17. The petroleum industry petitioners make the additional argument in favor of transfer that their disagreement with the OSHA standard is far more substantial than the AFL–CIO's. The AFL–CIO, which initially urged OSHA to promulgate a benzene standard, is, they urge, not "genuinely aggrieved" by the standard actually issued.

I do not rely on this argument in voting to transfer these cases. There is nothing which indicates that the AFL–CIO petitioned, alleging a mere technical, cosmetic, or non-substantive grievance, in order to give this court jurisdiction over petitions which might be filed by others, or in order to collusively assist OSHA in defending its standard. Absent any such evidence, I decline to examine the relative merits of each petitioner's substantive claims against the agency, merely to decide the proper venue. In the cases cited by the petroleum industry petitioners, *International Union, United Auto Workers v. NLRB*, 126 U.S.App.D.C. 11, 14, 373 F.2d 671, 674 (1967), and *Insurance Workers Int'l Union v. NLRB*, 124 U.S.App.D.C. 8, 360 F.2d 823 (1966), the insubstantiality of one petition for review was manifest on its face. In *Auto Workers*, we made clear that transfer on the basis of insubstantiality "is reserved for the special case where the 'inconsequential' char-

acter of the deficiency in findings or relief is established by the petitioner's own stipulation . . . or other pleading or representation." This is not such a special case; hence the relative substantive merit of the two petitions does not figure in the decision on the motion to transfer. *See also Saturn, supra*, 155 U.S.App. D.C. at 153, 476 F.2d at 909.

1. There is a factual dispute regarding whether copies of the standard were distributed at the end of this meeting to the invitees. According to industry affidavits, copies of the standard were not available at or immediately after the invitational gathering, Rathbun Aff. Swanson Aff. The government's affidavits claim that copies of the ETS were distributed "as the 9:35 briefing broke up . . . ." Werner Supp. Aff. Foley Aff. Brown Aff. The affidavits can be reconciled if it is assumed that not all persons attending the 9:30 meeting obtained a copy of the standard, because copies were apparently distributed after the meeting broke up and some of the invitees had departed.

2. The news release contained the language "For Release: Friday, April 29, 1977, 10:30 a. m. (EDT)."

American Petroleum Institute, the National Petroleum Refiners Association and American Petrofina Inc. et al. filed a petition for review of the same order in the Fifth Circuit. Many of the affected industry parties who sought to challenge the standard, either by motion to intervene or by petition to review, were excluded from the invitational meeting.[3]

Nine days later, on 19 May, the Secretary filed a motion to transfer to this court pursuant to 28 U.S.C. 2112,[4] which was opposed by the Fifth Circuit petitioners who claimed that the earlier petition in this court was premature. After hearing, the Fifth Circuit transferred the proceedings initiated in that court by the industry petitioners to this court for "a determination of the validity of the Unions' petition"[5] and

3. On 10 May 1977 the following parties filed a joint petition, No. 77–1973, in the Fifth Circuit challenging the standard: The American Petroleum Institute, The National Petroleum Refiners Association (on behalf of their respective members) and American Petrofina, Incorporated; Cities Service Company; Continental Oil Company; Exxon Corporation; Gulf Oil Company; Marathon Oil Company; Shell Oil Company; Standard Oil Company (Indiana); The Standard Oil Company (Ohio); and Texaco Inc. Subsequently, several other parties moved to intervene, including the Manufacturing Chemists Assn., (MCA) the American Iron and Steel Institute, (AISI) and the Independent Petroleum Association of America (IPAA). (These motions to intervene by IPAA, and AISI were held in abeyance by the Fifth Circuit pending our determination of the validity of the Unions' petition.) In addition, a second petition for review, *Delta Oil Co. et al. v. OSHA et al.*, No. 77–2055 (5th Cir.) was subsequently filed on 19 May 1977. On 13 June the clerk of this court granted the motions for intervention which had been received from the Fifth Circuit.

It appears that of all these parties, only petitioner American Petroleum Institute and intervenor Manufacturing Chemists Association were present at the invitational meeting although some individual parties were members of invited trade associations. Werner Aff.

4. On 20 May 1977 Judge Morgan on the Fifth Circuit issued an administrative stay of the order and directed the government to respond on the merits to the petitioners' stay motion by 27 May and set a hearing for 6 June. The Secretary of Labor requested reconsideration of this action, asserting that section 2112(a) required the Fifth Circuit to immediately transfer the case to this court.

held all pending motions in abeyance pending our determination of this issue.[6] Several petitioners now move to retransfer pursuant to the mandatory provision of 28 U.S.C. 2112(a).[7]

At the outset, it is clear that section 2112(a) demands that we resolve when the standard was issued. A petition for review which challenges an agency order not yet issued is invalid for prematurity and cannot confer jurisdiction over the merits of the order on the court of filing. *Saturn Airways, Inc. v. CAB*, 155 U.S.App.D.C. 151, 153, 476 F.2d 907, 909 (1973). Such a petition cannot qualify as "first instituted" within the meaning of 28 U.S.C. § 2112(a), as that section is designed to solve forum disputes as between courts having jurisdiction over the order.[8]

The government then moved in this court for an emergency *ex parte* restraining order to prevent the Fifth Circuit petitioners from implementing orders of the Fifth Circuit, or alternatively, requiring them to dismiss their case in that circuit. This motion was denied on 27 May 1977.

5. On 13 June the petition for review transferred from the Fifth Circuit was consolidated with the Unions' petition.

6. The temporary stay entered on 20 May 1977 was continued by the Fifth Circuit pending our assessment of the Unions' petition.

7. That statute states, in pertinent part:

If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed.

8. Our reading of 2112(a) leads us to the conclusion that the court of first filing should determine the validity of the petition filed in that court. If that court determines that its petition is invalid, it must dismiss the petition and retransfer all remaining proceedings transferred to it by other circuits to the next circuit where proceedings were instituted. *See Abourezk v. FPC*, 168 U.S.App.D.C. 246, 513 F.2d 504 (1975); *Chatham Manufacturing Company v. NLRB*, 404 F.2d 1116 (4th Cir. 1968). Apparently the Fifth Circuit acted on this interpretation of 2112(a) by transferring all actions here,

Whether the Unions' petition is premature rests upon whether the standard was "issued" at the invitational meeting. The Secretary maintains that issuance occurred at that point, even though some parties who sought to challenge the standard in the Fifth Circuit were not invited to the meeting and therefore were not apprised of the substance of the order until the 10:40 a. m. press conference—after the Unions had filed in this court.

I am not persuaded that the order was "issued" for purposes of filing for review before its substance was communicated to the general public at the subsequent news conference. The grant of unlimited discretion sought by the Secretary would thwart the policies underlying the provision of the Occupational Safety and Health Act giving all courts of appeal jurisdiction over the standard, 29 U.S.C. § 655(f), depending on the "person . . . adversely affected." The relevant subsection of the Occupational Health and Safety Act provides, in pertinent part:

> Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

29 U.S.C. § 655(f).

Although this provision does not specify when a standard is "issued," the face of it clearly indicates a legislative intent to establish a definite time frame within which a defined class, "[a]ny person who may be adversely affected by a standard", may seek judicial review. The legislative

scheme contemplates that interested parties are on an equal footing. If an order were deemed "issued" when communicated to individuals fortunate enough to be invited to a private meeting, the invitees would possess a longer time period in which to file for review than other affected persons.

Moreover, the favored invitees would have an unfair opportunity to arrogate their preferred forum. Such a practice is inconsistent with the implicit assumption of equality contemplated by the statute which entitles *any* member of the affected class to seek review in his place of residence or place of business. I discern no indication, either from the language of this provision or from its history, that Congress intended to create two or more classes of affected persons with unequal review rights. While we generally accord deference to the agency's view as to when an order is issued for purposes of review, deferring to the agency in this case would inevitably produce a situation of unequal footing among affected parties not created by the Act itself.[9]

Judge Leventhal asserts that ". . . so interpreting the statutes ["issued" "when its text is made available to the public at large"] would not bar the agency from discussing proposed or anticipated action with invited groups in advance of the vote or signature which makes it official agency action" (p. —— of 187 U.S.App.D.C., p. 969 of 570 F.2d). I am not at all sure that such discussion, after final agency action has been decided upon and is lacking only formal initiation, would be permissible. Certainly it would provoke highly interesting litigation, if the advance notice discussion appeared to be for the purpose of conferring an advantage in forum shopping on any group of affected parties (such is not here argued). Avoiding argument about

---

without attempting to determine the validity of the filing in this court.

**9.** Although the industry groups delayed challenging the standard for 11 days after the filing of the Unions' petition, we cannot conclude from this record that they were not prejudiced by their delay in knowledge of the agency action. A petition had been filed in this circuit before knowledge of the agency action came to

some industry groups. The Fifth Circuit petition would be *second* in time regardless of whether it was filed on the same day or eleven days later. We cannot speculate as to the actions of the Fifth Circuit petitioners were they faced with different circumstances nor can we make such hypothetical speculations a basis for decision.

the motive or good faith of the agency is one of the undeniable advantages of the clear cut rule I would follow here.

In enacting 28 U.S.C. § 2112 and 29 U.S.C. § 655(f), Congress declined to give the agency the choice over the forum in which it would defend its orders.[10] Yet the method of promulgation employed in the instant case (issuance at an invitational gathering) would allow the agency to accomplish indirectly, either inadvertently or intentionally, that which it could not do directly: decide the forum.[11]

We are cognizant that no procedure will afford simultaneous actual notification to all parties who may have an interest in bringing suit. As a practical matter, however, it is necessary to identify some point in time when review can be sought.

Principles of equity underlying the Act's review provision lead me to conclude that *issuance for review purposes occurs at the point when all affected parties have equal opportunity to gain actual knowledge of the agency action.* This point did not occur before the standard was divulged to the general public at the press conference.[12]

---

**10.** The legislative history of 28 U.S.C. 2112 illustrates that Congress sought to avoid the possibility that an agency could determine where a case was litigated. As originally proposed, 2112 provided that where multiple petitions were filed, the agency could select the forum by filing the record in that forum which the *agency* believed would be most convenient to the parties. In the course of the hearings, the abuses *inherent* in this system (including the possibility that an agency might file the record in a forum which tended to uphold its viewpoint) were pointed out. Hearing on H.R. 6682 before Subcomm. No. 3 of the House Comm. on the Judiciary, 84th Cong., 2d Sess. at 11–13 (1956). Hearing on H.R. 6788 before a Subcommittee of the House Committee on the Judiciary, 85th Cong., 1st Sess. 24–25, 33–34, 37–39 (1957). Accordingly, the provision was amended to its present form.

**11.** My conclusion that issuance for purposes of filing for review requires more than private dissemination of an order to a selected group finds further support in *Saturn Airways, Inc. v. CAB, supra,* 155 U.S.App.D.C. 151, 476 F.2d 907 (1973). In that case, we concluded that petitions for review of an order, filed subsequent to the public distribution of detailed press releases but prior to release of the order itself, were not premature. Not only had the

Accordingly, I would dismiss the Unions' petition as premature, and retransfer the remaining proceedings to the Fifth Circuit, the only circuit where valid petitions for review have been filed.

FAHY, Senior Circuit Judge:

I. In my opinion, the promulgation of the ruling at the 9:30 A.M. meeting on April 29 placed it in effect. It was then signed and announced by the issuing authority, and briefed to the assemblage as to its purport. The Secretary of Labor throughout these proceedings has maintained that the ruling was issued then, and it is recognized that his position is entitled to weight.

Those present at the meeting included representatives of the organizations named in Judge Leventhal's opinion. No one was excluded for the sake of exclusion, although the meeting was not all-inclusive of those who might be adversely affected, nor was the press conference which followed, nor can we say that the press release gave actual notice to all. The meeting was not private; it was a public announcement of

---

agency considered publication of the press release as its official action, but, in addition, the release communicated the substance of that action to the public. In effect, the communication of the order to the public by detailed press release was constructive issuance of the order itself for review purposes. In *Saturn,* both the detailed press release and the official text had been released to the general public; there was no suggestion that selected petitioners had received copies of the release in advance of distribution to the public. Although *Saturn* cannot govern whether an order is reviewable before its substance is communicated to the general public, it supports the notion that communication of agency action to the general public is an essential precedent to filing for review.

**12.** We do not here imply that every rule must be preceded by a press conference. The Occupational Safety and Health Administration is free to adopt other methods to mark the inception of the filing period, such as publication in the Federal Register, which are not subject to the abuse inherent in the procedure utilized in the instant case. I agree with Judge Leventhal that an agency rule certain as to when promulgation occurs is much to be desired.

the ruling in the presence of representatives of thousands of business and industrial organizations which, with their affiliates and members, might be adversely affected, and in the presence of representatives of labor organizations which also, with their innumerable affiliates and members, might be adversely affected. The Department of Labor thus made an honest effort to bring public notice of the rendition of the ruling and its substance to those deemed likely to be affected by it. The press conference which followed, whatever its usefulness, was not essential to its issuance. Registration of it under the Federal Register Act must follow, but neither was that a condition to its issuance.

Obviously anticipating that the ruling might be announced at the meeting, the Industrial Union Department, AFL–CIO (AFL–CIO for short) had prepared immediately to be able to petition this court for its review, and did so. No other petition was filed until eleven days later when a joint petition was filed in the Fifth Circuit, followed there by another of like character. Judge Wilkey is of the opinion that the first of those petitions took precedence under § 2112(a) over the earlier AFL–CIO petition filed in this court because the first petition filed in the Fifth Circuit was the first filed after the press conference. He deems the ruling not to have been issued until released to the general public at the press conference. This position rests primarily upon certain implications drawn from the provision of the Occupational Safety and Health Act governing review of the ruling, 29 U.S.C. § 655(f), which provides:

Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

[2] This provision is not devoted to the manner in which a reviewable ruling under the Act shall be issued, and the only implication to be drawn from it is that the manner must allow a reasonable time for adversely affected parties to file for review within sixty days of promulgation of the ruling. No present petitioner for review suggests its inability to have done so. It is said, however, that the legislative scheme contemplates that interested parties are on an equal time footing to obtain review—an impossibility to accomplish, as the Secretary points out and as Judge Wilkey recognizes when he states that "no procedure will afford simultaneous notification to all parties who may have an interest in bringing suit." Nevertheless, it is said that principles of equity underlying the Act's review provision lead to the conclusion that, "issuance for review purposes occurs at the point when all affected parties have equal opportunity to gain actual knowledge of the agency action," which it is further said, "did not occur before the standard was divulged to the general public at the press conference." Aside from a lack of basis in § 655(f) for this conclusion attributed to principles of equity, it is obvious that the press conference did not afford all affected parties an equal opportunity "to gain actual knowledge of the agency action." That this is so is recognized again when the case of *Saturn Airways* is considered in footnote 11 of Judge Wilkey's opinion. The case was concerned with the communication of an order by a press release. The referenced footnote characterizes the release as "constructive issuance of the order itself for review purposes." The court held that this constructive issuance was not premature even though it preceded actual release of the order itself, for the issuance by the press release had communicated in some detail the substance of the action of the agency. Nothing in our opinion indicated that we thought the press release afforded "equal opportunity to gain actual knowledge of the agency action." The press release in the case before us now was also no more than constructive notice, and like that in *Saturn Airways* gave no actual equal time opportunity to affected parties to seek

review.[1] Constructive notice simply does not accomplish that because the innumerable differences in the situations and circumstances of affected parties prevent it from doing so. Such notice may result in less actual equality of opportunity to gain actual knowledge than some other manner of issuance, such as was here adopted at the 9:30 meeting, called for the purpose of helpfully disseminating the ruling to the industrial-labor interests affected. To adopt constructive notice by a press release or registration as essential to a valid issuance of a ruling would not only sacrifice methods of according greater actual equality of opportunity to gain knowledge of it, but would deprive the Departments and agencies of Government of the reasonable administrative discretion now available to them and which Congress has not sought to standardize. I think it unwise for the court to attempt to do so in this case, especially in the absence of broader representation of the Departments and agencies concerned, and an opportunity accorded to the parties who are before us to direct their attention to the proposal before an announcement about it.[2]

*Skelly Oil Co. v. Phillips*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, which arose under the Natural Gas Act, bears upon the subject. The Court noted that Section 16 of the Act provides,

> orders of the [Federal Power] Commission shall be effective on the date and in the manner which the Commission shall prescribe.

Upon this background the Court stated:

> Of course, the Commission has considerable administrative discretion to decide when an order may fairly be deemed to have been "issued",

and then, holding that the ruling in question had not been properly issued, pointed out the reason:

> a certificate cannot be said to have been issued for the purposes of defining rights and the seeking of reconsideration by an aggrieved person if its substance is merely in the bosom of the Commission. Knowledge of the substance must to some extent be made manifest.

Section 16 I suggest was no more than a recognition by Congress of the authority then residing in the Commission; such a provision has not been deemed essential to the existence of a like discretion in other Departments or agencies of Government. Of course the manner must fairly make known the substance of the ruling, and cannot be designed for the purpose of giving any party an advantage to petition first for review. No such design is attributed to the 9:30 meeting in this case.[3]

Equitable principles do not appear to me to support according the first-filing position to the Fifth Circuit petitioners. Aside from what I have noted above there is a deal also to be said from an equitable standpoint in letting the law follow the fact of first-filing

---

1. In pointing out in *Saturn Airways* that a press release had made the ruling known to the public the court was far from holding that a procedure such as was adopted in this case could not also suffice.

2. See footnotes 3 and 7, *infra*.

3. It is suggested, however, that issuance of a ruling in a manner as adopted at the meeting April 29 would allow the agency to accomplish, either inadvertently or intentionally, that which it could not do directly, that is, to decide the forum. No such intention is attributed to the Department in this case and the suggestion in any event overlooks that it was quite natural for the ruling to be issued in this jurisdiction. Moreover, its validity cannot be impaired by the fact that this was done. The press conference was no less here than the meeting. In

*Ball v. NLRB*, 299 F.2d 683, 688–89 (4th Cir. 1962), in rejecting an attack upon a rigid application of the "first-filed" rule of § 2112(a), the court referred to this problem as it affected orders of the National Labor Relations Board, as follows:

> It may well be that a practical effect of adopting the "hour and minute" rule will be to increase the number of reviews of [Labor] Board orders in the District of Columbia Circuit. There is nothing in Section 10(f) or in its legislative history to indicate that Congress considered this undesirable. If, in a particular case, it is shown that a hearing in that court would impose an undue burden on one of the parties, the case will be transferred to a more suitable forum.

by the AFL–CIO on April 29. With good reason relying upon the issuance of the ruling at the meeting that morning the AFL–CIO, no doubt feeling bound by it, also with good reason, *Kessler v. FCC*, 117 U.S.App.D.C. 130, 147, 326 F.2d 673, 690 (1963), filed first. Except for such reliance, AFL–CIO could easily have filed first again in this court subsequent to the press conference and long before any petition was filed in the Fifth Circuit.

[1] II. As Judge Leventhal states and I agree as above indicated this Circuit has "jurisdiction over the petition filed by the AFL–CIO, and we are the court of first-filing within the meaning of 28 U.S.C. § 2112(a)." In Part III of his opinion, however, with which I respectfully disagree, Judge Leventhal concludes that the proceedings should be transferred to the Fifth Circuit, joining Judge Wilkey in doing so, but necessarily for different reasons. I have stated why I differ with Judge Wilkey's conclusion that the AFL–CIO petition was premature, and now state my reasons for disagreeing with Judge Leventhal in joining Judge Wilkey in transferring the proceedings to the Fifth Circuit.

Preliminarily, the pertinent portion of 28 U.S.C. § 2112(a) is repeated:

   \* \* \* If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with

respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the. proceedings with respect to such order to any other court of appeals.

Judge Leventhal and I agree not only that this is the court of first-filing but also that this circuit is a more convenient forum for the parties than the Fifth Circuit. It follows under the statutory plan that venue should remain in this court; for under the statute there is no ground for transfer in the interest of justice except for the convenience of the parties.[4] Congress has thus codified, as it were, a method of handling the problem.[5]

That the interest of justice factor available to the first-filing court under § 2112(a) is limited to the convenience of the parties is clear from the language of § 2112(a) and from its legislative history,[6] *Ball v. NLRB*, 299 F.2d 683, at 687, 689 (4th Cir. 1962). This is in contrast with the transfer authority conferred by congress upon District Courts by 28 U.S.C. § 1406(a). *Gulf Oil Corporation v. FPC*, 330 F.2d 824 (5th Cir. 1964). Judge Leventhal, however, invokes a non-statutory discretionary power of a Circuit Court of Appeals, having jurisdiction, to transfer venue to another court in the interest of justice and efficient judicial administration, citing in support *Eastern Airlines, Inc. v. CAB*, 122 U.S.App.D.C. 375,

---

**4.** Even were another circuit more convenient for the parties transfer would not be mandated under the statute should the court of first-filing find the interest of justice should lead it in its discretion to retain venue. On the other hand, unless the convenience of the parties is found to reside elsewhere, no transfer is authorized by the statute.

**5.** It is probably true that many rulings of Departments or agencies located at the Capital can be conveniently litigated in this circuit by other parties as well as by the Government. Thus the convenience of the parties may not justify a transfer to another circuit in many proceedings. But this would be due to the fact of convenience, which under § 2112(a) governs the matter. I think one can also take judicial

notice, however, that innumerable cases of Departmental and agency rulings are reviewed in other circuits on petitions first-filed there; and our smaller geographic and less populous area compared with other circuits results in perhaps a greater amount of federal litigation, and of greater variety, being conducted in those circuits than here. And see *Ball v. NLRB, supra.*

**6.** The House Report, H.R.Rep.No.842, 85th Cong., 1 Sess. 5 (1957), states that the court of appeals "in which the first proceeding was instituted, should have exclusive jurisdiction of all proceedings involving the same order with authority to transfer all the proceedings to another court of appeals if that would best serve the convenience of the parties."

378, 354 F.2d 507, 510 (1965), and additional cases in footnote 13 of his opinion. Reference is also made to *American Public Gas Ass'n v. FPC*, 180 U.S.App.D.C. 380, 555 F.2d 852 (1976). None of these cases discusses the application of such authority to a first-filing court, specifically dealt with by § 2112(a), although the opinion in *Ball v. NLRB, supra,* does discuss in detail the legislative history and meaning of the first-filing rule. I read that opinion not only as implicitly rejecting the view that under § 2112(a) there is transfer authority unrelated to the convenience of the parties but as implicitly holding also that no non-statutory inherent authority to transfer venue in the interest of justice or judicial administration is available to a § 2112(a) first-filing court. Be that as it may I accept that there is, and now consider the case in that light.

The basis for Judge Leventhal's conclusion that these proceedings should be transferred to the Fifth Circuit under an expanded authority not expressed in § 2112(a) is as follows: The statute contemplates that (a) each person affected has at least a theoretical opportunity to give consideration, after public disclosure of issuance of the order, as to the circuit of convenience, if he acts timely, (b) the Fifth Circuit petitioners were denied that opportunity, (c) it is in the interest of justice that justice appear to be done, and (d) when a court of first-filing materializes before even the substance of the agency decision is disclosed to the public at large the appearance of justice is brought into serious question. A new rule of administrative law is thereupon sought to be promulgated that in general a case will be transferred to the circuit in which the first petition was filed subsequently to disclosure of the agency decision to the general public, although a different circuit is the first-filing circuit and the circuit of convenience for the parties.[7] Applying this rule to the present case transfer is said to

be required in the interest of justice and judicial administration. Examined in light of what actually occurred in this case and the applicable law the conclusion reached I suggest is left bare of equitable and legal content:

The Fifth Circuit petitioners had the opportunity after disclosure of the ruling at the press conference to give consideration to the circuit of convenience and did so by choosing that circuit. The circumstance that prior to the press conference AFL–CIO had also considered and made its choice of a circuit in no degree blurred the choice of the Fifth Circuit petitioners. With the different choices before us a majority of this court, the court authorized by § 2112(a) to make the decision, have decided that this is the circuit of convenience for all parties, irrespective of when or where any petitioner had indicated its own choice of a circuit of convenience by filing a petition.

The factual and legal situation above described, by which venue settled into this court, clearly calls for no transfer of venue in the name of the efficient administration of justice, for no factor other than choice of a circuit of convenience has been suggested as bearing on the efficient administration of justice in this case.

This leaves for consideration whether there is basis for finding that there is an appearance of justice not being done due to the manner of issuance of the ruling, and, if so, that this calls for transfer of venue to the Fifth Circuit. The Fifth Circuit petitioners' contention pressed in this court was that the filing here by AFL–CIO was premature because the Department's ruling became effective only at or subsequent to the press conference, after which they first filed. We have not agreed with this contention. Those petitioners therefore are not entitled to a change of venue on the

7. The unwisdom of proposing such a rule governing venue, especially without broader consideration and opportunity for presentation of views by affected Departments and agencies of Government, or consideration by Congress, is indicated by an example of the existing diversity in methods of issuing rulings set forth in *Ball v. NLRB*, 299 F.2d at 684. Moreover, the rationale of the proposal is more relevant to the manner in which a ruling should be initially issued than to the question thereafter raised of possibly transferring venue.

theory that as to them there is an appearance of justice not being done. A party is not entitled in the name of protecting the appearance of justice to receive by transfer that to which the transferring court has found another litigant in the case to be lawfully entitled. Of course neither the Secretary of Labor nor the AFL–CIO has cause to consider an appearance of justice not being done as to either. As to the latter this court has held that its petition was not premature and that this became the court of first-filing—and the Secretary takes the same position.

Finally, there is not, as it seems to me, basis for the court itself to consider that there is an appearance of justice not being done unless we transfer venue. The scales of justice are equally balanced as between the circuits. There is no element in this proceeding to distinguish between the circuits on the basis of an inequality of either to do justice in matters submitted for its consideration. If this court is not in error, and we think we are not, in holding that the AFL–CIO petition was not premature, from which it follows that the press conference was not essential to the validity of the issuance of the ruling, with the result that the AFL–CIO petition vested venue in this court, there would be no appearance of a miscarriage of justice by retention of venue in this court. Rather the contrary. We have held in this case that it is not necessary that all affected parties be afforded either actual knowledge of a ruling or an opportunity to choose a circuit of convenience, on an equal time basis, as a condition to the validity of issuance of a ruling. Moreover, and importantly, non-compliance with these rejected standards has not resulted in the Fifth Circuit petitioners being deprived of an actual opportunity to make known their choice of a circuit of convenience or to obtain a decision with respect thereto. Section 2112(a) has provided the means. As the Court in *Ball v. NLRB, supra,* points out:

> If, in a particular case, it is shown that a hearing in that [first-filing] court would impose an undue burden on one of the parties, the case will be transferred to a more suitable forum.

And see to the same effect footnotes 3 and 6, *supra.*

Transfer of these proceedings for the reason assigned—to correct the alleged appearance of justice not being done—in the end seems inevitably to rest solely upon a supposition that had the petitioners to the Fifth Circuit been able to indicate their choice of a circuit of convenience before this circuit had materialized as the first-filing court, the Fifth Circuit would have become the court to decide the circuit of convenience and might have decided that it was that circuit. I cannot agree that this is a valid ground for transferring venue to that court. So to do is to disregard the basic and lawful decisions we have reached as to when the ruling was validly issued, and as to which circuit in fact is the circuit of greater convenience for the parties; it fails to recognize and give effect as intended by Congress to the means afforded by § 2112(a) to late-filing petitioners to obtain a lawful decision as to the circuit of convenience; it deprives the first-filing petitioner of venue rights to which it is lawfully entitled; it elevates the status of the late-filing petitioners above that conferred by statute upon the first-filing petitioner and sends the parties to a circuit of less convenience than this circuit. Thus it is inconsistent with good judicial administration and it advances no interest of justice.

In the situation thus described I conclude that assumption of venue by the Fifth Circuit validly can rest only upon waiver of venue rights lawfully acquired, or upon some other ground of which I am not aware.[8]

I respectfully dissent from the order of transfer.

8. Footnote 14 of Judge Leventhal's opinion refers to *Van Dusen v. Barrack,* 376 U.S. 612, 643, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), as supporting transfer authority based on a factor

other than convenience of the parties. *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir.), and *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F.Supp. 52, 55 (D.Del.1975), are also cited to similar effect. None involved the authority of the Courts of Appeals under § 2112(a) or the problem of multi-filed petitions in those courts seeking review of the same ruling; each was concerned with transfer of venue authority possessed in civil cases by the District Courts under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice". In *Van Dusen*, Justice Goldberg for the Court looked to the more general grant of transfer authority "in the interest of justice" in "the analogous" section 1406(a) to justify District Courts' transfer au-

thority to include a factor of "fairness." See 376 U.S. at 621, n. 11, 84 S.Ct. 805. And the "fairness" factor to which the Court referred related to the fairness of the conduct of the trial still to be held. There was involved the possible application of laws of different states of possibly different effects upon the rights of the parties—thus matters of "fairness" in transferring venue. Nothing of this character pertains to our case in its present stage or in any prospective stage. Each of the cases referred to in footnote 14 arose in a factual context so different from the proceedings before us as to lend no support to a transfer of this case, howsoever broadly the transfer authority residing in our court may be interpreted to be.