610 F.2d 956
 102 L.R.R.M. (BNA) 2455, 198 U.S.App.D.C. 14,
87 Lab.Cas. P 11,595
 INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE
WORKERS, AFL-CIO-CLC, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
East Dayton Tool and Die Company, Intervenor.
INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE
WORKERS, AFL-CIO-CLC, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Westinghouse Corporation, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
The EAST DAYTON TOOL AND DIE CO., Respondent,
International Union of Electrical, Radio and Machine
Workers, AFL-CIO-CLC, and I.U.E. Local 668, Intervenors.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Respondent,
International Union of Electrical, Radio and Machine
Workers, AFL-CIO-CLC, Intervenor.
 Nos. 78-2066, 78-2067, 78-2261 and 78-2262.
 United States Court of Appeals,
District of Columbia Circuit.
 Oct. 2, 1979.
Rehearing Denied Nov. 21, 1979.
 
 William F. Ford, Atlanta, Ga., was on the motion for East Dayton Tool and Die Co., intervenor in No. 78-2066 and respondent in No. 78-2261.
 Bernard J. Casey, Washington, D. C., Walter P. DeForest, Peter D. Post, Pittsburgh, Pa., and Robert E. Payne, Richmond, Va., were on the motion for Westinghouse Elec. Corp., intervenor in No. 78-2067 and respondent in No. 78-2262.
 Winn Newman, James G. Mauro, Jr., New York City, Michael B. Trister and Richard Sobol, Washington, D. C., were on the opposition for petitioner in Nos. 78-2066 and 78-2067 and intervenor in Nos. 78-2261 and 78-2262.
 Elliott Moore, Deputy Associate Gen. Counsel, Paul Spielberg and Collis Suzanne Stocking, Attys., N. L. R. B., Washington, D. C., were on the opposition for respondent in Nos. 78-2066 and 78-2067 and petitioner in Nos. 78-2261 and 78-2262.
 Before BAZELON, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 Circuit Judge TAMM dissents.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 These consolidated cases concern the obligation of employers to supply unions during collective bargaining with information on employment of minorities and women. The International Union of Electrical, Radio & Machine Workers, AFL-CIO-CLC, was the charging party in two unfair labor practice proceedings before the National Labor Relations Board in which Westinghouse Electric Company[1] and East Dayton Tool & Die Company[2] were found to have violated Sections 8(a)(1)[3] and 8(a)(5)[4] of the National Labor Relations Act by refusing to provide the union with statistical data on the hiring and retention of minorities and women and with reports of complaints of racial and sex-based discrimination leveled by bargaining-unit employees. The Board stopped short of granting the union's demand for information pertaining to individuals outside the bargaining unit, and for the companies' plans or reasons for not hiring more women and members of minorities.[5]
 
 
 2
 The union filed petitions for review of these orders here.[6] The next day, Westinghouse petitioned in the Fourth Circuit,[7] and thereafter East Dayton in the Sixth Circuit,[8] for review of the orders respectively affecting them. Subsequently, in this court, the companies moved for and were granted leave to intervene,[9] and the Board applied for enforcement.[10]
 
 
 3
 Now before us are the companies' motions to dismiss the union's petitions as premature, or in the alternative to transfer the Westinghouse and East Dayton cases to the Fourth and Sixth Circuits, respectively.[11] The question of prematurity turns on whether the Board's orders validly issued prior to the union's filings, and we find that they had.[12] We further conclude that the motions to transfer should be denied.[13]
 
 I. ISSUANCE OF THE DECISIONS
 
 4
 Between 4:00 and 4:30 p. m. on the afternoon of October 31, 1978, employees of the Board's associate executive secretary, Ms. Enid W. Weber, delivered to the Board's mailroom copies of the Board's decisions and orders in Westinghouse and East Dayton.[14] In accordance with the Board's unofficial but "regular issuance practice," some copies were bagged and marked to be sent by registered mail to "the designated representative for each party," and a second set was similarly bagged and marked to be sent by regular first class mail to "each of the parties, other interested persons, and to all persons sent copies by registered mail."[15] Logs indicating whom had been served by first class mail and whom had also been served by registered mail were maintained in Ms. Weber's office.[16]
 
 
 5
 The Board's records indicate that copies were mailed first class to Westinghouse, East Dayton and the union on October 31.[17] The United States Postal Service picked up that first class mail at the Board's mailroom sometime during the evening on that date.[18] But the copies to go by registered mail, though delivered to the mailroom simultaneously with those sent first class, were not picked up by the Postal Service until 4:00 p. m. the next day, November 1.[19]
 
 
 6
 The union received its first class mail copy of the East Dayton decision at its Washington, D.C., mailing address early on the morning of November 1.[20] Because of an error in mailing, the Westinghouse decision did not arrive until the next day.[21] At 8:51 a. m. on November 1, the union petitioned this court for review of the East Dayton order.[22] At 11:11 a. m. on the same morning, the union, inferring from the East Dayton decision that the Westinghouse decision likewise was adverse to it with respect to the issues raised by its earlier filing petitioned for review of the Westinghouse orders in this court.[23]
 
 
 7
 Both petitions were filed before either Westinghouse or East Dayton had notice or knowledge of the Board's decision. On November 2, counsel for Westinghouse received a registered mail copy of the decision in its case and petitioned for review in the Fourth Circuit.[24] Counsel for East Dayton received initial service of the decision in its case by registered mail on November 3,[25] and petitioned for review in the Sixth Circuit on December 1.[26]
 
 II. THE MOTIONS TO DISMISS
 
 8
 Disposition of the companies' motions to dismiss the union's petitions as premature requires consideration of three related statutory provisions. Section 10(f) of the National Labor Relations Act provides that "(a)ny person aggrieved by a final (unfair labor practice) order of the Board" may obtain review thereof in this court, or in the court of appeals for any circuit in which the unfair labor practice occurred or in which the person resides or transacts business.[27] Section 10(c) of the Act specifies that "(i)f upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist . . . ."[28] Permissible methods of service are detailed in Section 11(4), which states that "orders, and other process and papers of the Board . . . may be served either personally or by registered mail or by telegraph or by leaving a copy thereof at the principal office or place of business of the person required to be served."[29]
 
 
 9
 The companies contend that an order must be issued before an aggrieved party may petition for its review; that issuance, by virtue of Section 10(c), can be accomplished only through service; and that the alternative methods of service mentioned in Section 11(4) are exclusive.[30] The union's petitions were filed prior to effectuation of service upon the companies by registered mail and therefore, the companies insist, should be dismissed as premature.
 
 
 10
 An agency's choice of methods for informing interested parties of its decision is committed to its discretion and will be sustained if it is reasonable and contravenes no statutory directive.[31] The companies' argument of statutory inconsistency falters on the absence of any congressional indication that a Board order is unissued, for purposes of judicial review, until served. On the contrary, Section 10(c) in terms requires the Board to "issue And cause to be served" its decisional orders, thus at least suggesting that issuance and service are separate processes. Section 10(c) clearly requires service to be made.[32] But an order can, so far as appears from the statute, be publicly promulgated prior to service.[33] We must, too, give considerable weight to the interpretation placed on the statute by the Board,[34] which nowhere in its implementing regulations makes valid issuance of its orders dependent upon prior valid service. As intervenors' logic breaks down at this point, we do not reach the final premise of their statutory-inconsistency syllogism, namely, that Section 11(4), though phrased in permissive terms, prescribes the only four proper means of service.[35]
 
 
 11
 We believe also that the Board's dissemination of its order by first class mailing to the parties was sufficiently reasonable to save the union's petitions in this court from prematurity. In Saturn Airways, Inc. v. CAB,[36] we ruled that a petition for review filed before the text of regulations challenged had been released was not premature when "at the time of filing it was clear both that the Board had taken what it deemed official action and that the substance of that action had been communicated to the public in some detail."[37] More recently, in Industrial Union Department v. Bingham,[38] we held that disclosure to the public at large is not a jurisdictional prerequisite to a reviewable order. So long as the agency makes "an honest effort to bring public notice of the rendition of the ruling and its substance to those deemed likely to be affected by it," we said, an interested party with actual notice of the decision should be able to seek immediate review of it, for it is binding upon him.[39]
 
 
 12
 This principle is squarely applicable to the cases at bar. The Board's first class mailing was to the parties, their counsel and other interested persons, who indubitably were those most vitally concerned with the rulings. The decisions accompanying the orders could hardly fail to elucidate the actions the Board had taken. We are mindful that the union was alerted to those actions before anyone else, but we think that is unimportant here. Clearly, the Board's issuance of its decisions by first class mail was not calculated to give any party a litigating advantage; the union simply benefited by its Washington mailing address and by the Postal Service's tardiness in picking up the copies for registered mailing. The union should not be penalized for not awaiting receipt of the decisions via registered mail before proceeding with petitions for review.[40] The motions to dismiss the petitions for want of jurisdiction are accordingly denied.
 
 III. THE MOTIONS TO TRANSFER
 Congress has ordained that
 
 13
 (i)f proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.[41]
 
 
 14
 As the court of first filing, then, it is our duty to determine whether the convenience of the parties or the interests of justice would be served by transferring these causes.[42] The companies advance four reasons assertedly warranting transfer. First, they maintain that because they lacked knowledge of the Board's decisions at the time the union's petitions for review were filed, fairness and the appearance of fairness counsel deference to their choices of forum.[43] Second, they contend that the Fourth and Sixth Circuits are more appropriate reviewing tribunals since the unfair labor practices in question took place within their respective jurisdictions.[44] Third, East Dayton claims that only insignificant portions of the information sought by the union were not ordered released, and thus that the union's aggrievement is inconsequential when compared to East Dayton's.[45] Lastly, Westinghouse urges that judicial economy would be achieved by transferring its case to the Fourth Circuit, for that court had in 1976 ruled on the confidentiality of Westinghouse's affirmative action plan.[46] We think the last three arguments lack any real merit, and thus may be treated summarily and sequentially.
 
 
 15
 In the first place, Section 10(f) of the National Labor Relations Act,[47] unlike Section 10(e),[48] places this court on a par with the courts of appeals for the circuits in which the alleged unfair labor practices occurred. We would dishonor that congressional design and the priority statutorily granted the first-filing petitioner were we to transfer these cases solely because of the locus of the unfair labor practices in question.[49]
 
 
 16
 Secondly, the Board did not order disclosure of all of the information the union had requested.[50] We have indicated that "a party's selection of forum is (not) necessarily controlling if it has received substantially all the relief contemplated, and any shortfall is inconsequential," even though it might technically remain an "aggrieved party."[51] Nevertheless, "(t)he possibility of a transfer on this ground is not to be taken as permitting trial by affidavit on" an issue in that regard.[52] Rather, "(i)t is reserved for the special case where the 'inconsequential' character of the deficiency in findings or relief is established by the petitioner's own stipulation (,) . . . pleading or representation."[53] We cannot so characterize the union's position.
 
 
 17
 Thirdly, Westinghouse's argument that the Fourth Circuit's experience in Westinghouse Electric Corporation v. Schlesinger[54] has given it "such familiarity with the background of the present controversy as to command preference for its resolution"[55] is unpersuasive. That litigation dealt with efforts by Westinghouse and other government contractors to prevent governmental divulgence of affirmative action programs submitted under claims of confidentiality.[56] This case is in no way a sequel to that one. That was a reverse-Freedom of Information Act case involving protection for trade secrets and confidential financial information, the disclosure of which would inflict competitive injury.[57] This is a labor law case involving the duty to supply collective bargaining representatives with relevant information. Though there is some overlap between the information at issue in Westinghouse and that at stake here, congruence is not nearly complete.[58] More fundamentally, we do not perceive how those factual similarities materially enhance the appropriateness of review in the Fourth Circuit. With little or no judicial economy attainable, there is no warrant for undermining the statutory preference for the court in which review proceedings are first instituted.
 
 
 18
 Lastly, we deal with the companies' more substantial argument for transfer: the policy demanding an opportunity for all affected parties to learn of an agency order before a petition entitled to priority may be filed. We honored such a policy in our decision in Industrial Union Department, where preservation of "the appearance of justice" led us to transfer proceedings involving a standard promulgated for benzene. The petitions for review had been filed in this court prior to the time that some parties, who later petitioned in the Fifth Circuit for review, knew anything about the standard.[59] The agency had invited representatives of approximately twelve groups to its office, where the standard was first unveiled;[60] although the invitees were selected without any thought of giving anyone a litigating advantage, some interested parties were not represented and thus had no chance to learn of the standard until after petitions were filed.[61]
 
 
 19
 The companies rely heavily on Industrial Union Department, but in our judgment they misapprehend its rationale. As Judge Wilkey there pointed out, "no (practical) procedure will afford simultaneous actual notification to all parties who may have an interest in bringing suit."[62] What the appearance of justice requires is that the notification procedure utilized be one fairly designed to afford affected parties an Equal opportunity to gain adequate knowledge of the agency action. The first class mail service used in these cases did not in fact result in actual notice of the Board's decisions to all parties at the same time, but it would be inaccurate to say that the opportunities were skewed from the outset. Indeed, we see no significant difference on this score between first class and registered mail service, although the latter is heralded as valid by the companies.[63] Moreover, in assessing overall fairness, we are mindful that the union could not reasonably have been expected to await a second notification of the Board's orders before filing its petitions.[64]
 
 
 20
 Another consideration strongly supports our retention of this litigation. The Westinghouse and East Dayton cases were heard together before the Board and involve identical issues of law. The Board and the union are headquartered in the District of Columbia, Westinghouse is a national corporation whose counsel are not strangers to this circuit, and it is unlikely that counsel for East Dayton will have any serious logistical problem in litigating here. Not only is this circuit the one in which proceedings were first instituted and in which the Board has accordingly filed the certified index of the administrative record,[65] but it is the only jurisdiction wherein these cases will remain together.[66] This factor, in our view, indicates positively that sound judicial administration will best be served if these cases go forward here.
 
 
 21
 We cannot resist a closing admonition. If the federal administrative agencies would promulgate straightforward regulations explaining how and when their reviewable orders are to issue, protracted procedural disputes born of the desire to win the race to the courthouse would largely be consigned to an early grave.
 
 
 22
 Motions denied.
 
 
 23
 TAMM, Circuit Judge, dissents.
 
 
 
 [1]
 Westinghouse Elec. Corp. and International Union of Elec. Workers, 239 N.L.R.B. No. 19 (Oct. 31, 1978) (hereafter cited as "Westinghouse ")
 
 
 [2]
 East Dayton Tool & Die Co. and International Union of Elec. Workers, 239 N.L.R.B. No. 20 (Oct. 31, 1978) (hereafter cited as "East Dayton ")
 
 
 [3]
 29 U.S.C. § 158(a)(1) (1976)
 
 
 [4]
 29 U.S.C. § 158(a)(5) (1976)
 
 
 [5]
 Westinghouse, supra note 1, 239 N.L.R.B. No. 19 at 6; East Dayton, supra note 2, 239 N.L.R.B. No. 20 at 26-27
 
 
 [6]
 See notes 20-23 Infra and accompanying text
 
 
 [7]
 See note 24 Infra and accompanying text
 
 
 [8]
 See note 26 Infra and accompanying text
 
 
 [9]
 International Union of Elec. Workers v. NLRB, No. 78-2066 (D.C.Cir. Dec. 6, 1978) (order granting leave to intervene); International Union of Elec. Workers v. NLRB, No. 78-2067 (D.C.Cir. Dec. 6, 1978) (same)
 
 
 [10]
 NLRB v. East Dayton Tool & Die Co., No. 78-2261 (D.C.Cir. filed Dec. 12, 1978); NLRB v. Westinghouse Elec. Corp., No. 78-2262 (D.C.Cir. filed Dec. 12, 1978)
 
 
 [11]
 See 28 U.S.C. § 2112(a) (1976), quoted in relevant part in text Infra note 41
 
 
 [12]
 See Part II Infra
 
 
 [13]
 See Part III Infra
 
 
 [14]
 Affidavit of Enid W. Weber, Associate Executive Secretary, NLRB, at 3; see also Statement of Policies and Procedures Governing Issuance of National Labor Relations Board Decisions and Orders in Unfair Labor Practice Cases (unpublished)
 
 
 [15]
 Affidavit of Enid W. Weber, Associate Executive Secretary, NLRB, at 2-3
 
 
 [16]
 Id. at 2
 
 
 [17]
 Id. at 3
 
 
 [18]
 Id
 
 
 [19]
 Id
 
 
 [20]
 Petitioners' Response to Intervenors' Motions to Dismiss or Transfer at 3
 
 
 [21]
 Apparently the Board did not designate the correct post office box in mailing the Westinghouse decision to the union. Id. at 5
 
 
 [22]
 Docketed as No. 78-2066
 
 
 [23]
 Docketed as No. 78-2067. Westinghouse questions whether references in the East Dayton decision to the companion decision in Westinghouse provided the union with enough information to decide intelligently on whether to petition for review of the order in the latter. Cf. Microwave Communications, Inc. v. FCC, 169 U.S.App.D.C. 154, 161, 515 F.2d 385, 392 (1974). We believe, however, that footnotes 6 and 13 of the Board's decision in East Dayton did provide sufficient indication of the results reached in Westinghouse to preclude us from characterizing the union's petition as unreasoned. East Dayton, supra note 2, 239 N.L.R.B. No. 20 at 6 n.6, 11 n.13
 
 
 [24]
 Docketed in the Fourth Circuit as No. 78-1769
 
 
 [25]
 East Dayton Motion to Dismiss Petition for Review or Transfer Proceedings at 3
 
 
 [26]
 Docketed in the Sixth Circuit as No. 78-1568
 
 
 [27]
 29 U.S.C. § 160(f) (1976). This case does not involve an attempt to review anticipated agency action. See Industrial Union Dep't v. Bingham, 187 U.S.App.D.C. 56, 59-60, 570 F.2d 965, 968-969 (1977) (opinion of Leventhal, J.)
 
 
 [28]
 29 U.S.C. § 160(c) (1976)
 
 
 [29]
 29 U.S.C. § 161(4) (1976). The Board has issued regulations tracing this statutory provision. 29 C.F.R. § 102.111(a) & (c) (1978). A salient feature of the regulations is their requirement of verified proof of service
 
 
 [30]
 E. g., East Dayton Motion to Dismiss Petition for Review or Transfer Proceedings at 4
 
 
 [31]
 E. g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 676, 70 S.Ct. 876, 881, 94 L.Ed. 1194, 1202 (1950); Industrial Union Dep't v. Bingham, supra note 27, 187 U.S.App.D.C. at 60, 570 F.2d at 969 (opinion of Leventhal, J.); Id. 187 U.S.App.D.C. at 69, 570 F.2d at 978 (opinion of Fahy, J.)
 
 
 [32]
 29 U.S.C. § 160(c) (1976), quoted in pertinent part in text at note 28 Supra. See Association of Am. R.R.'s v. Costle, 183 U.S.App.D.C. 362, 364, 562 F.2d 1310, 1312 (1977) ("(t)he word 'shall' is the language of command in a statute . . . .")
 
 
 [33]
 There simply is no guidance in the statute or the implementing regulations pertaining to when the substance of a final decision shall be deemed communicated to affected parties or to the public generally sufficiently to activate the period for filing a petition for review. Cf. Medical Comm. for Human Rights v. SEC, 139 U.S.App.D.C. 226, 231-232, 432 F.2d 659, 664-665 (1970), Vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972)
 
 
 [34]
 See, E. g., Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801-1802, 23 L.Ed.2d 371, 383-384 (1969); Zemel v. Rusk, 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179, 187 (1965); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); Microwave Communications, Inc. v. FCC, supra note 23, 169 U.S.App.D.C. at 165, 515 F.2d at 396
 
 
 [35]
 This argument rests on adoption of the maxim Expressio unius est exclusio alterius. See National Petroleum Refiners Ass'n v. FTC, 157 U.S.App.D.C. 83, 87, 482 F.2d 672, 676 (1973), Cert. denied, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974)
 
 
 [36]
 155 U.S.App.D.C. 151, 476 F.2d 907 (1973)
 
 
 [37]
 Id. 155 U.S.App.D.C. at 153, 476 F.2d at 909
 
 
 [38]
 Supra note 27
 
 
 [39]
 Industrial Union Dep't v. Bingham, supra note 27, 187 U.S.App.D.C. at 68, 570 F.2d at 977 (opinion of Fahy, J.); Id. 187 U.S.App.D.C. at 61-62, 570 F.2d at 970-971 (opinion of Leventhal, J.); but see Id. 187 U.S.App.D.C. at 64, 570 F.2d at 973 (opinion of Wilkey, J.)
 
 
 [40]
 We do not share the companies' belief that a requirement of awaiting receipt of a registered mail copy of the administrative decision would assure that all entrants in the race to file will leave the starting gate simultaneously. See note 63 Infra and accompanying text
 
 
 [41]
 28 U.S.C. § 2112(a) (1976)
 
 
 [42]
 Industrial Union Dep't v. Bingham, supra note 27, 187 U.S.App.D.C. at 59 n.4, 570 F.2d at 968 n.4 (opinion of Leventhal, J.); Abourezk v. FPC, 168 U.S.App.D.C. 246, 513 F.2d 504 (1975) (statement of Bazelon, C. J.); J. P. Stevens & Co. v. NLRB, 100 L.R.R.M. 2853 (4th Cir. 1979)
 
 
 [43]
 E. g., Brief for East Dayton at 13
 
 
 [44]
 E. g., East Dayton Motion to Dismiss Petition for Review or Transfer Proceedings at 3-4
 
 
 [45]
 Brief for East Dayton at 17
 
 
 [46]
 Reply Brief for Westinghouse at 23
 
 
 [47]
 29 U.S.C. § 160(f) (1976)
 
 
 [48]
 29 U.S.C. § 160(e) (1976). This provision authorizes the Board to seek enforcement of its orders in the court of appeals for the circuit in which the unfair labor practice occurred or in which the respondent resides or transacts business. Thus, while a petition to review a final order of the Board can always be filed in this court, it is not always an appropriate forum for an application for enforcement. The differences between §§ 10(e) and 10(f) are discussed in Ball v. NLRB, 299 F.2d 683, 688-689 (4th Cir.), Cert. denied, 369 U.S. 838, 82 S.Ct. 868, 7 L.Ed.2d 843 (1962). See also note 49 Infra
 
 
 [49]
 "By not eliminating, but expressly acknowledging, the District of Columbia as an alternative forum, the apparent aim of Congress is to ease the situation of a losing party desiring review. It affords him a choice denied the Board when it proceeds under section 10(e)." Ball v. NLRB, supra note 48, 299 F.2d at 688
 
 
 [50]
 See text Supra at note 5
 
 
 [51]
 International Union, UAW v. NLRB, 126 U.S.App.D.C. 11, 14, 373 F.2d 671, 674 (1967)
 
 
 [52]
 Id. 126 U.S.App.D.C. at 14, 373 F.2d at 674
 
 
 [53]
 Id. See Public Serv. Comm'n v. FPC, 153 U.S.App.D.C. 195, 197 n.2, 472 F.2d 1270, 1272 n.2 (1972); Truck Drivers & Helpers Local 728 v. NLRB, 128 U.S.App.D.C. 216, 218, 386 F.2d 643, 645 (1967)
 
 
 [54]
 Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190 (4th Cir. 1976), Cert. denied, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977)
 
 
 [55]
 American Pub. Gas Ass'n. v. FPC, 180 U.S.App.D.C. 380, 385, 555 F.2d 852, 857 (1976); see Public Serv. Comm'n. v. FPC, supra note 53, 153 U.S.App.D.C. at 197-198, 472 F.2d at 1272-1273; Cf. Eastern Airlines, Inc. v. CAB, 122 U.S.App.D.C. 375, 378, 354 F.2d 507, 510 (1965)
 
 
 [56]
 Westinghouse Elec. Corp. v. Schlesinger, supra note 54, 542 F.2d at 1195-1197
 
 
 [57]
 We have rejected the notion of specialized circuits for particular types of cases, pointing out that "general familiarity with the legal questions presented by a case is decidedly different from acquaintance with the proceedings that gave rise to the order in suit." American Pub. Gas Ass'n. v. FPC, supra note 55, 180 U.S.App.D.C. at 385, 555 F.2d at 857
 
 
 [58]
 The Fourth Circuit case involved "extensive information on staffing patterns, pay scales, actual and expected shifts in employment, promotions, seniority and related matters as well as forecasts of future employment, goals, time-tables and future employment projections, promotion and utilization of minorities and females." Westinghouse Elec. Corp. v. Schlesinger, supra note 54, 542 F.2d at 1195. Compare the information in suit described in text Supra at notes 4-5. Moreover, the Union is seeking the information as an adjunct to representation of its members, and is not interested in giving a competitive edge to the companies' business competitors. Perhaps confidential treatment will be granted certain information
 
 
 [59]
 Industrial Union Dep't v. Bingham, supra note 27, 187 U.S.App.D.C. at 63-64, 570 F.2d at 972-973 (opinion of Leventhal, J.); Cf. id., 187 U.S.App.D.C. at 67, 570 F.2d at 976 (opinion of Wilkey, J.)
 
 
 [60]
 Id. 187 U.S.App.D.C. at 58, 570 F.2d at 967 (opinion of Leventhal, J.)
 
 
 [61]
 Id., 187 U.S.App.D.C. at 63, 570 F.2d at 972 (opinion of Leventhal, J.)
 
 
 [62]
 Id. 187 U.S.App.D.C. at 67, 570 F.2d at 976 (opinion of Wilkey, J.)
 
 
 [63]
 See, E. g., Brief for East Dayton at 9-10
 
 
 [64]
 See Kessler v. FCC, 117 U.S.App.D.C. 130, 146-147, 326 F.2d 673, 689-690 (1963)
 
 
 [65]
 Pursuant to the instruction of 28 U.S.C. § 2112(a) (1976) to file the certified index in the court in which proceedings are first instituted, the companies' motions to dismiss the Board's applications for enforcement must stand or fall with their motions to dismiss or transfer the union's petitions
 
 
 [66]
 See United Steelworkers v. Marshall, 592 F.2d 693, 698 (3d Cir. 1979) (desirability of having one court review air standards for lead respectively issued by Department of Labor and Environmental Protection Agency prompted court to transfer petitions for review of Department's action to this circuit, where review of Agency's national ambient air standards must be had)