OIL, CHEMICAL & ATOMIC WORKERS LOCAL UNION NO. 6-418, AFL-CIO; Oil, Chemical & Atomic Workers Local Union No. 6-75, AFL-CIO, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Minnesota Mining and Manufacturing Co., Intervenor.

INTERNATIONAL CHEMICAL WORKERS UNION, LOCAL NO. 733, AFL-CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Borden Chemical, A Division of Borden, Inc., Intervenor.

OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, KANSAS CITY, LOCAL NO. 5-114, AFL-CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Colgate Palmolive Company, Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MINNESOTA MINING AND MANUFACTURING COMPANY, Respondent,

Oil, Chemical & Atomic Workers Local Union No. 6-418, AFL-CIO, et al., Intervenors.

BORDEN CHEMICAL, A DIVISION OF BORDEN, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

International Chemical Workers Union, Local No. 733, AFL-CIO, Intervenor.

COLGATE-PALMOLIVE COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, and Oil, Chemical & Atomic

Workers International Union, Kansas City, Kansas Local No. 5–114, AFL–CIO, Respondents.

Oil, Chemical & Atomic Workers International Union, Kansas City, Local 5–114, AFL–CIO, Intervenor.

Nos. 82–1418 to 82–1420, 82–1589, 82–1743 and 82–1940.

United States Court of Appeals, District of Columbia Circuit.

Nov. 30, 1982.

As Amended Dec. 17, 1982.

George H. Cohen and Laurence Gold, Washington, D.C., were on the response to the motions to dismiss or in the alternative to transfer for Oil, Chemical & Atomic Workers Union, Local No. 6–418, AFL–CIO, petitioners in 82–1418, 82–1419, 82–1420 and intervenors in 82–1589, 82–1743 & 82–1940.

G. William Frick, Washington, D.C., Howard A. Crawford and Jack D. Rowe, Kansas City, Mo., were on the motion to dismiss or in the alternative to transfer for Colgate-Palmolive Co., petitioner in 82–1940 and intervenor in 82–1420.

George J. Tichy, II, San Francisco, Cal., was on the motion to dismiss or in the alternative to transfer for Borden Chemical, a Division of Borden, Inc., petitioner in 82–1743 and intervenor in 82–1419.

Elliott Moore, Associate General Counsel, Collis Suzanne Stocking and Carol DeDeo, Washington, D.C., Attorneys, National Labor Relations Board, were on the response to the motion to dismiss or in the alternative to transfer for National Labor Relations Board, respondent in 82–1418, 82–1419, 82–1420, 82–1743 and 82–1940 and petitioner in 82–1589.

Before ROBINSON, Chief Judge, WILKEY and BORK, Circuit Judges.

Opinion filed PER CURIAM.

Concurring Statement filed by Circuit Judge WILKEY.

PER CURIAM:

The issues presented here on motion constitute an attempt by two losers of a race to the courthouse to invalidate the results of the race on the grounds that they didn't know the race was on and that the winner wasn't entitled to enter the race. The respective employer intervenors in these two cases, Colgate-Palmolive Company ("Col-

gate") and Borden Chemical, a Division of Borden, Inc. ("Borden Chemical"), seek to destroy the venue advantage gained by the petitioning union's[1] prior filing of its petitions in this Court for review of two decisions by the National Labor Relations Board (NLRB or "Board"). Colgate and Borden Chemical argue (1) that the NLRB's decision notification procedures denied the companies sufficient notice that the race to the courthouse had begun; (2) that the failure of the union and this Court to comply with the service requirements contained in the Federal Rules of Appellate Procedure also denied the companies notice of the race; (3) that the union is not a truly aggrieved party entitled to respect of its choice of forum; and (4) that the convenience of the parties in the interest of justice militates in favor of transfer. The employers also argue that the alleged lack of aggrievement requires that the petitioning union be dismissed for lack of standing.

We have previously determined that the Board's notification procedures provide all affected parties with an equal opportunity to gain adequate knowledge of a Board decision. *International Union of Electrical, Radio and Machine Workers v. NLRB,* 610 F.2d 956 (D.C.Cir.1979). We further conclude today that this court had no obligation to notify intervenors of the filing by the union of the petitions for review, and that the failure of the union to comply with the applicable service requirements is neither jurisdictional nor prejudicial in this case. Finally, it is clear that the union was truly aggrieved by the Board's actions and that the convenience of the parties in the interest of justice favors venue in this circuit.

The union's choice of this forum is therefore entitled to respect. The motions to transfer are denied. In addition, because aggrievement sufficient to withstand transfer presupposes aggrievement sufficient to confer standing, the motions to dismiss are also denied.

## I. BACKGROUND

The petitioning union locals have been attempting since 1977 to obtain from Colgate and Borden Chemical certain information claimed relevant to employee health and safety. Although the requests for information varied between the two companies, both Colgate and Borden Chemical were asked to reveal the names of all chemicals and raw materials used and produced in their respective Kansas City, Kansas and Fremont, California plants.[2] Both employers refused to supply the requested information, claiming that it contained confidential and proprietary data and that legitimate business reasons justified nondisclosure.[3] The union then filed unfair labor practice charges with the NLRB.

By separate decisions in 1979 Borden Chemical and Colgate were both found by two regional NLRB administrative law judges (ALJ) to have engaged in unfair labor practices in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act (NLRA or "Act"), 29 U.S.C. § 158(a)(5) and (1) (1976). Borden Chemical was ordered to furnish the complete requested list of raw materials and chemicals stored, handled and processed in its Fremont, California plant. Colgate was ordered to furnish most of the information requested of it, but the furnishing of the alleged proprietary or trade secret informa-

---

1. The petitioner in No. 82–1419 is the International Chemical Workers Union, Local No. 733, AFL–CIO. The petitioner in No. 82–1420 is the Oil, Chemical & Atomic Workers International Union, Kansas City, Local No. 5–114, AFL–CIO. Both petitioners are collectively referred to in this opinion as the "union", unless otherwise indicated.

2. Colgate was also requested to produce certain employee medical and insurance data, a list of all monitored contaminants and radiation

sources, and information regarding programs to reduce noise level and prevent heart disease.

3. As the union petitioners here claim principal aggrievement from the Board's disposition with regard to the alleged proprietary information, and as the extent of that aggrievement is the primary issue presented on motion, we do not address and express no opinion on any other factual or legal issues that may be present in these cases.

tion sought was relegated to the collective bargaining process in the hope that good faith bargaining would lead to acceptable methods of furnishing such information while maintaining satisfactory safeguards to preserve legitimate employer interests in confidentiality. Both Colgate and the Kansas City Local appealed the latter decision to the Board. As the Fremont Local had completely prevailed before the ALJ, only Borden Chemical appealed the California decision.

Because they presented substantially identical legal issues, the two proceedings were consolidated for oral argument before the Board.[4] Specifically, both cases presented, *inter alia,* the question of whether and in what circumstances an employer may withhold health and safety information claimed to be confidential or proprietary.

By separate decisions and orders issued April 9, 1982, the Board sustained the unfair labor practice charges against Colgate and Borden Chemical. The Board determined that "because health and safety are terms and conditions of employment, data regarding such matters is relevant to the Union's representational functions."[5] Thus, the Board found that the union was entitled to all of the requested information. The Board declined, however, to order that all of the information be released. Rather, the Board ordered the employers to furnish the union with all of the information requested, *except* the information alleged to be confidential or proprietary. The Board cited Supreme Court precedent to the effect

that the union's need for information must be balanced against any "legitimate and substantial" confidentiality interests of the employer. *See Detroit Edison Company v. NLRB,* 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). The Board, however, declined to undertake the balancing itself before first affording the parties an opportunity to reach an accommodation on their own, in the hope that "good faith bargaining may lead to acceptable methods of furnishing [proprietary] information while maintaining satisfactory safeguards to preserve confidentiality."[6] The Board ordered the parties to bargain, acknowledging that should the union and the companies be unable to reach agreement "these parties may be before us again."[7] If necessary, the Board stated it would "undertake the task of balancing the Union's right of access to data relevant to collective bargaining with [the employers'] expressed confidentiality concerns in accordance with the principles set forth in *Detroit Edison.*"[8]

The Board issued the decisions on Friday, April 9, 1982 by simultaneously mailing copies to all interested parties. On the following Monday, April 12, 1982, the union received its copies of the decisions, and filed corresponding petitions for review in this court. Borden Chemical also received its copy of the decision in its case on Monday, and Colgate received its copy on Tuesday, April 13, 1982. Some two weeks later, Colgate and Borden Chemical filed petitions for review in the Tenth and Ninth Circuits,

---

4. The Colgate and Borden Chemical proceedings were also consolidated with a third case involving the Minnesota, Mining and Manufacturing Company ("3M"). The 3M case presented substantially the same legal issue with regard to union requests for health and safety information concerning the company's Cottage Grove, Maplewood, and St. Paul, Minnesota plants. The union has also petitioned for review of the Board's 3M decision in this court, and the Board has filed a petition for enforcement of the 3M order. No motions to transfer have been made in the 3M cases, and they have been consolidated with the union's petitions in the Colgate and Borden Chemical cases.

5. *Colgate-Palmolive Company and Oil, Chemical and Atomic Workers International Union,*

*Kansas City, Local No. 5–114, AFL–CIO,* Case 17–CA–8331, 261 N.L.R.B. No. 7 (1982), at 8–9 (hereinafter *Colgate-Palmolive Company* ); *see also Borden Chemical, a Division of Borden, Inc. and International Chemical Workers Union, Local No. 733, AFL–CIO,* Case 32–CA–551, 261 N.L.R.B. No. 6 (1982), at 4–5 (hereinafter *Borden Chemical* ).

6. *Colgate-Palmolive Company, supra* note 5, at 17; *Borden Chemical, supra* note 5, at 6.

7. *Colgate-Palmolive Company, supra* note 5, at 18; *Borden Chemical, supra* note 5, at 6.

8. *Colgate-Palmolive Company, supra* note 5, at 19; *Borden Chemical, supra* note 5, at 7.

respectively. Colgate and Borden Chemical have both moved to dismiss the union's petitions in this court on the ground that the union is not an "aggrieved party" entitled to review. In the alternative, the companies have moved to transfer the petitions to the Tenth and Ninth Circuits under 28 U.S.C. § 2112(a) (1976) on the ground that the union's "first filing" here is ineffective. The companies claim that improper NLRB decision notification procedures and both the union's and this court's failure to comply with applicable service requirements render the petitions invalid. The companies further argue that even if the first filing here is technically valid, this court should transfer the two union petitions on the ground that the union is not a "truly aggrieved party" and that the convenience of the parties and the interests of justice are best served by transfer.

The union opposes both dismissal and transfer, and the NLRB opposes both motions to the extent that they are grounded on allegations that the petitions were premature or invalid due to any Board impropriety in its decision notification procedures. The NLRB concedes that the union has standing to appeal as a "person aggrieved" under 29 U.S.C. § 160(f).

## II. DISCUSSION

Colgate and Borden Chemical have both styled their papers as motions to dismiss for lack of standing, or, in the alternative, for transfer to the Tenth and Ninth Circuits, respectively. In the instant case, once the procedural challenges to the union's filing are resolved, the standing and transfer inquiries are much the same, in that both involve determining the level of aggrievement or injury suffered by petitioners. We hold that petitioners here sustained sufficient injury to withstand both dismissal and transfer.[9]

### A. Motions to Dismiss

■ Section 10(f) of the NLRA provides in relevant part:

Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside.

29 U.S.C. § 160(f) (1976). "[S]tanding to appeal an administrative order as a 'person aggrieved,' 29 U.S.C. § 160(f), arises if there is an adverse effect in fact, and does not ... require an injury cognizable at law or equity." *Retail Clerks Union 1059 v. NLRB,* 348 F.2d 369, 370 (D.C.Cir.1965) (emphasis added). "As long as a charging party ...[10] gets less than he requested," he is treated as a person aggrieved under section 10(f). *Chatham Manufacturing*

9. We note that were we to transfer these petitions, the question of standing would be one for the transferee court, as aggrievement insufficient to warrant respecting a petitioner's choice of forum may well be aggrievement sufficient to withstand dismissal. *See UAW v. NLRB,* 373 F.2d 671, 674 (D.C.Cir.1967) (per curiam). Motions to dismiss are thus properly referred to the court with venue to decide the question, *i.e.* the transferee court. *See, e.g., Liquor Salesmen's Union Local 2 v. NLRB,* 664 F.2d 1200, 1206 n. 8 (D.C.Cir.1981). In the instant case, the union has been sufficiently aggrieved to withstand transfer, and that determination necessarily mandates that the motions to dismiss be denied. The merits of the motions to dismiss, however, are properly discussed before the motions to transfer, for the simple reason that any inquiry into the sufficiency of a petitioner's aggrievement for purposes of determining venue must begin with determining whether the alleged aggrievement is even capable of withstanding a motion to dismiss.

10. A "charging party" in NLRB parlance is the party bringing an unfair labor practice charge before the Board. The "charged party" is the alleged wrongdoer. The charged party is of course aggrieved as to that portion of the Board order "which results in a remedial order against him." *International Union, United Automobile Aerospace & Agricultural Implement Workers v. Scofield,* 382 U.S. 205, 210, 86 S.Ct. 373, 377, 15 L.Ed.2d 272 (1965).

*Company v. NLRB,* 404 F.2d 1116, 1118 (4th Cir.1968); *see also International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Scofield,* 382 U.S. 205, 210, 86 S.Ct. 373, 377, 15 L.Ed.2d 272 (1965) ("the charging party is aggrieved with respect to the portion of the decision dismissing the complaint").

Both Colgate and Borden Chemical argue that the union is not a "person aggrieved" within the meaning of section 10(f), and that it therefore has no standing to seek review in any court of the Board's orders. Colgate argues that of the information requested of it, 99.5% was ordered released to the union by the Board, and the remaining .5% of proprietary information, although not ordered released, was ordered to be a mandatory subject of collective bargaining. These statistics, Colgate contends, indicate "beyond a shadow of a doubt" that the union substantially prevailed, if not completely prevailed, on all of the issues raised before the Board. Borden Chemical raises the additional point that the mandatory bargaining requirement imposed on the alleged proprietary information was the result of a specific finding by the Board that the information was relevant to the health and safety of employees, and thus was information to which the employee bargaining representatives were *entitled,* even though that entitlement was subject to being outweighed or conditioned by legitimate employer interests. Thus, Borden argues, the union "won" on that issue too, and cannot be said to be aggrieved by any part of the Board's orders.

The union contends that it is clearly aggrieved by the NLRB's decisions, in that it was not granted the relief requested, namely, an order compelling disclosure of all the disputed information. The union argued before the Board and continues to argue here that the requested proprietary information is needed to enable it to identify all potentially hazardous substances used in Colgate's and Borden Chemical's operations. The union claims that despite the Board's acknowledgement of this need and the companies' "manifest recalcitrance" in past negotiations, the Board has now sanctioned further delay when any one of the substances whose identity is being withheld could presently be threatening the health of company employees. Thus, the union argues that the Board's refusal to order disclosure of all the requested information constitutes aggrievement sufficient to foreclose dismissal or transfer.

We agree that the union has standing under section 10(f)'s broad standard of aggrievement. Even if the mandatory bargaining requirement is seen as a partial victory with regard to the disclosure of the alleged proprietary information, the fact of the matter is that the union was denied the relief it sought—a Board order to release the information directly. *See Truck Drivers & Helpers Local No. 728 v. NLRB,* 386 F.2d 643, 644 (D.C.Cir.1967) (per curiam) (denial of *additional* relief in the form of an injunction renders a person aggrieved within the meaning of section 10(f)).

Despite the Board's determination that the union was entitled to the alleged proprietary information, in that the information was relevant to the exercise of the union's representational responsibilities, the Board's decision denies the union access to the information pending either negotiated conditions or a future Board order should negotiation prove fruitless. At the least, the union has standing to challenge (1) the relegation of the contested information to mandatory bargaining which by itself does not insure its release; [11] (2) the refusal of the Board to itself address the merits of

---

11. The duty to bargain "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d) (1976). *See NLRB v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958) (duty to bargain limited to mandatory subjects, "and within that area neither party is legally obligated to yield").

All that is required is that "the two sides discuss the matter at the bargaining table," *Brockway Motor Trucks v. NLRB,* 582 F.2d 720, 738 (3d Cir.1978), and provided the bargaining is in good faith, "the employer's ability to act as it sees fit ultimately remains untrammelled." *Id.* at 729.

disclosure under *Detroit Edison* criteria; and (3) the denial of the relief sought, *i.e.,* immediate release of the disputed information, either unconditionally or with Board-prescribed conditions.

The general duty to bargain collectively includes the duty to provide "relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative" in the negotiating process. *Detroit Edison,* 440 U.S. at 303, 99 S.Ct. at 1125; *see also International Union of Electrical, Radio and Machine Workers v. NLRB,* 648 F.2d 18, 25 (D.C.Cir.1980). Both the union and the Board itself contend that the Board has the *power* to perform the *Detroit Edison* balancing of competing union and employer interests *prior* to collective bargaining and order the release of relevant information either unconditionally or with certain prescribed conditions. *See Detroit Edison,* 440 U.S. at 315–319, 99 S.Ct. at 1131–1133; *see also NLRB v. Truitt Manufacturing Co.,* 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). The Board did not do so, and therein lies the rub. Whether the Board has the power and whether and how it should have exercised it, as opposed to "remanding" the information to the bargaining table, are questions on the merits, the answers to which do not negate standing to raise the questions.[12]

Furthermore, Colgate and Borden Chemical have resisted disclosure of the requested information for close to five years now, and the Board's order with regard to the alleged proprietary information allows the employers to continue withholding the data through years more of bargaining and litigation. If the withheld information does indeed concern potential health and safety hazards to employees, the delay itself is additional aggrievement to the union.

Finally, the Board itself concedes that the union has standing as a "person aggrieved" under 29 U.S.C. § 160(f), precisely because it did not grant the relief sought.

In sum, the union has standing to challenge the Board's action.

### B.  *Motions to Transfer*

Section 2112(a) of title 28 provides in relevant part:

If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

28 U.S.C. § 2112(a) (1976). Colgate and Borden Chemical argue that the union's petitions should be transferred to the Tenth and Ninth Circuits under section 2112(a). Colgate admits that the union's petition here was filed two weeks before the company's petition in the Tenth Circuit for review of the same order, and Borden similarly admits that it filed in the Ninth Circuit some two weeks after the union's corresponding petition here. Both companies argue, however, that the union's prior filings in this court are premature and ineffective due to improper NLRB notice procedures and the union's failure to comply with applicable service requirements, thus rendering their petitions in the Ninth and Tenth Circuits the petitions of *de jure* first filing. In the alternative, the companies invoke a recognized exception to venue in the court of first filing where the first-filing petitioner is not "truly aggrieved." Finally, Colgate and Borden Chemical contend that even if this court is the valid court of first

---

12. We note also that to the extent our inquiry into petitioner's aggrievement pertains to the propriety of transfer, *see infra* pp. 14–23, we must guard against "delv[ing] into the merits of the underlying dispute." *Liquor Salesmen's*

*Union Local 2 v. NLRB,* 664 F.2d 1200, 1208 (D.C.Cir.1981). It is enough to note here that the moving papers themselves reveal substantial questions. *See id.*

filing, the court should exercise its discretion under section 2112(a) to transfer the union petitions to the other circuits "[f]or the convenience of the parties in the interest of justice."

### 1. NLRB Notice Procedures

■ Colgate contends that because it did not receive notice of the Board's Friday, April 9, 1982 decision until Tuesday, April 13, 1982, the day after the union's petition was filed in this court, it lost the race to the courthouse before it even knew the race was on. Colgate argues that it was thus unfairly prejudiced [13] and that this prejudice renders the union's first filing ineffective and thus premature under 28 U.S.C. § 2112(a).

The NLRB has filed a detailed affidavit describing the Board's notification practice and procedure, which requires simultaneous first class mailing to all interested parties and their counsel on the day the decision is issued. An additional copy is sent to counsel by certified mail. The affidavit states that a copy of the April 9, 1982 Board decisions was sent by both certified and first class mail to counsel of record for each party to the agency proceedings. Counsel of record for Colgate, located in Kansas City, signed the certified mail receipt on Tuesday, April 13, 1982. It is unknown when or if the first class mail copy reached him. Counsel of record for the union is located in Washington, D.C. and received his copy on Monday, April 12, 1982. The April 9 decision was rendered two years and three months after oral argument, and there is no indication in the parties' papers that any party had advance notice of the date of decision.

In *International Union of Electrical, Radio and Machine Workers v. NLRB,* 610 F.2d 956 (D.C.Cir.1979), we expressly validated the NLRB's simultaneous mailing notification procedure and squarely rejected the proposition that one's address or the vagaries of postal service can render peti-

tions for review premature for purposes of section 2112(a)'s first filing rule. We held that justice requires only "that the notification procedure utilized be fairly designed to afford affected parties an equal opportunity to gain adequate knowledge of the agency action." *Id.* at 963 (original emphasis). With specific regard to the NLRB mailing procedure the court found that

[t]he first class mail service used in these cases did not in fact result in actual notice of the Board's decisions to all parties at the same time, but it would be inaccurate to say that the opportunities were skewed at the outset.

*Id.* at 963–964. Service by mail was "not calculated to give any party a litigating advantage; the union simply benefited by its Washington mailing address." *Id.* at 961. *International Union of Electrical, Radio and Machine Workers* is thus dispositive of Colgate's claims.[14]

### 2. Improper Service

Federal Rule of Appellate Procedure 15(c) provides that:

A copy of a petition for review or of an application or cross-application for enforcement of an order shall be served by the clerk of the court of appeals on each respondent in the manner prescribed by Rule 3(d), unless a different manner of service is prescribed by an applicable statute. At the time of filing, the petitioner shall furnish the clerk with a copy of the petition or application for each respondent. At or before the time of filing a petition for review, the petitioner shall serve a copy thereof on all parties who shall have been admitted to participate in the proceedings before the agency other than respondents to be served by the clerk, and shall file with the clerk a list of those so served.

Both Colgate and Borden Chemical contend that the union's failure to serve a copy of its petitions for review "at or before the

---

**13.** Borden Chemical received a copy of the NLRB Decision and Order in its case on Monday, April 12, 1982, and has claimed no prejudice from Board notification procedures.

**14.** We note that the Kansas City law firm representing Colgate lists a Washington, D.C. office on its letterhead. Use of that mailing address might well have insured earlier delivery.

time of filing" on the companies as well as its failure to file a list of those served with the clerk is both grounds for dismissal and, in the alternative, grounds rendering the union's first-filing invalid for purposes of the section 2112(a) transfer provision. The companies also argue that the clerk of this court failed to comply with rule 15(c)'s requirement that the clerk serve named respondents with a copy of the administrative petition for review.

As an initial matter, the charge of noncompliance by the clerk of this court with rule 15(c) has absolutely no merit. The companies contend that even though they were *mistakenly* named as respondents in the union's original petitions the clerk was still required to serve them with a copy of the petition. The union had originally named both the NLRB and the employers as respondents in its April 12, 1982 petitions. The day after the petitions were filed, April 13, 1982, the clerk of this court properly served copies on the NLRB, as required not only by rule 15(c), but by the NLRA. 29 U.S.C. § 160(f) (1976) ("[a] copy of such petition shall be forthwith transmitted by the clerk of the court to the Board"). At the same time, the clerk notified the union that the employers were not proper respondents, and by letters dated April 16, 1982, the union requested that Colgate and Borden Chemical be administratively deleted from the caption.

■ Although the NLRA does not itself expressly preclude the naming of respondents other than the NLRB, it has been stated that parties to the agency proceedings

> are not proper respondents to a petition to review an order of the Board, since petitioner has no standing to request a decree against [them], and . . . the court has no power to issue a decree against them, except upon petition of the Board to enforce an order of the Board against them.

*American Newspaper Publishers Association v. NLRB,* 190 F.2d 45, 49 (7th Cir.1951). Rather, parties before the Board have a right to *intervene* in review or enforcement proceedings. *Scofield, supra,* 382 U.S. at 208, 86 S.Ct. at 376.

Colgate was not a proper respondent to the union's petitions, and was therefore not entitled to service of a copy of the petition by the clerk of this court in the four days between filing and the voluntary striking by the union of Colgate as a named respondent. Even if it were so entitled, Fed.R. App.P. 3(d), which prescribes the manner of rule 15(c) service, flatly states that "[f]ailure of the clerk to serve notice shall not affect the validity of the appeal." Fed.R. App.P. 3(d). In any event, Colgate does not contend that it *should* have been a named respondent, and it would make no sense to require the clerk of this court to serve copies of petitions on persons erroneously named as respondents; those parties have no legitimate expectation of service by this court.

■ Colgate and Borden Chemical did, however, have a legitimate expectation of service by the petitioner. Rule 15(c) requires that "at or before the time of filing a petition for review," petitioners shall serve a copy on "all parties who shall have been admitted to participate in the proceedings before the agency other than respondents to be served by the clerk." The rule further requires that the petitioner "file with the clerk a list of those so served." The union in this instance neither served Colgate or Borden Chemical nor provided this court with a service list. The union seeks to explain this lapse by its expectation that the clerk would serve the companies due to the naming of them as respondents. The union says that it did not learn that service had not been made on the employers until sometime in May, after which it did mail copies of the petitions on May 18, 1982.

Colgate and Borden Chemical argue that the union's failure to comply with rule 15(c) is a ground for dismissal of the petition or, alternatively, a ground for invalidating the union's first-filing status as premature under section 2112(a). This argument has no merit. We have said that failure to comply with the contemporaneous service requirement contained in rule 15(c) is a defect that

is "not jurisdictional in nature" and thus not determinative of section 2112(a) priority. *American Public Gas Association v. FPC*, 555 F.2d 852, 856 & n. 1 (D.C.Cir.1976) (per curiam) (dictum). Even if the union had hand-delivered the petition to Colgate, the company would not have been able to effect prior or contemporaneous filing of a petition to review in this court. Thus, rule 15(c) has no material relation to considerations of transfer.

The purpose of the rule 15(c) service requirement is to assure all parties to the administrative proceedings "an opportunity to file a petition within the time allowed by statute." 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 215.06, at 15–14 n. 4 (2d ed. 1982). The requirement was apparently patterned on the similar requirement imposed on district court clerks when processing civil appeals. *Id.* A district court clerk must serve notice of the filing of a notice of appeal on all parties which triggers the fourteen-day period allowed other parties to file a cross-appeal, even if the statutory time to appeal has expired. Fed.R.App.P. 3(d), 4(a)(3). The purpose of the rule, as least with regard to civil appeals, is to prevent foreclosing appeal by a party who "is satisfied with a judgment if, but only if, it is to be the final result; that is, if no other party intended to appeal from it." 9 *Moore's Federal Practice, supra*, ¶ 204.11[1], at 4–40.

Not only is there no analogous fourteen-day extension of the time to petition in this court for review of an agency order, but there is *no* time limit within which petitions for review of NLRB decisions must be brought. *See Buchanan v. NLRB*, 597 F.2d 388, 392 (4th Cir.1979). Rather, petitions must be brought within a "reasonable" time, a period dependent on the factual circumstances. *Id.* at 393. The union served copies of the petitions on Colgate and Borden Chemical on May 18, 1982, some five weeks after the Board's decision. Whether this service was within a "reasonable" time to appeal is irrelevant here, as both companies filed their petitions for review in the Tenth and Ninth Circuits some three weeks before receiving service of the union's petitions for review. In addition, both Colgate and Borden Chemical filed motions to intervene in the proceedings here on May 7, 1982 and May 12, 1982, respectively, motions that were granted on May 17, 1982. In short, the failure of the union to serve Colgate and Borden Chemical with copies of the petitions "at or before the time of filing" those petitions or to provide the clerk with a list of those served, in no way prejudiced the companies' right to appeal within the time allowed by law or to protect their interests by way of intervention in this court. The union won the venue race to the courthouse, and failure to comply with rule 15(c) neither deprives it of its victory nor deprives this court of jurisdiction to hear the case.

3. *Is the Union "Substantially Aggrieved?"*

Colgate and Borden Chemical both contend that even if the union's petitions in this court are not rendered ineffective by NLRB notification procedures and the failure of the union to comply with rule 15(c), transfer is mandated under the recognized exception to section 2112(a) venue in the forum of first filing for cases "where the first petition to review is filed by a party who is not substantially aggrieved." *Public Service Commission v. FPC*, 472 F.2d 1270, 1272 (D.C.Cir.1972) (per curiam); *see also Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C.Cir.1981). Lack of substantial aggrievement "undercut[s] the assumption of a good faith petition to review." *Public Service Commission*, 472 F.2d at 1272. "Substantial aggrievement" is lacking if a party "has received substantially all the relief contemplated, *and* any shortfall is inconsequential even though it does not eliminate the technical status of 'aggrievement.'" *Liquor Salesmen's Union*, 664 F.2d at 1205 (quoting *United Auto Workers v. NLRB*, 373 F.2d 671, 673 (D.C. Cir.1967) (emphasis added)).

In *Liquor Salesmen's Union*, the denial of attorneys' fees to an otherwise prevailing union, which filed first, was held to be insubstantial aggrievement, because fees

and costs are "special or extraordinary relief," "relate[ ] to no part of the underlying dispute between employer and union," and "are generally not considered by the Board as part and parcel of its usual compensatory remedy." 664 F.2d at 1207–1208. Thus, not only had the union substantially prevailed, in that it had received all of the relief requested except fees, but the denial of fees itself was "inconsequential" and insubstantial.

Colgate and Borden Chemical attempt to construe *Liquor Salesmen's Union* as imposing some sort of statistical quantitative test. They argue that because the union received 99.5% of the information requested, and because the remainder was ordered a mandatory subject of bargaining, it "substantially prevailed" and thus was not truly aggrieved by the Board's decision. But *Liquor Salesmen's Union* also requires that the "shortfall" *itself* be inconsequential or insignificant. Regardless of whether it concerned .5% or .05% of the information sought, the denial of a disclosure order as to the proprietary information cannot be deemed insignificant or inconsequential. In *Liquor Salesmen's Union,* we made clear that "it is inappropriate to compare the relative aggrievement of the union and the company, where both are substantial." 664 F.2d at 1206. Statistical tests create a very real danger of impermissible comparisons. Rather, we look to the *substance* of the shortfall or aggrievement alleged.

In *International Union of Electrical, Radio and Machine Workers, supra,* the union had sought certain information from the employer concerning employment of minorities and women. Although there was no imposition of a mandatory bargaining requirement, the fact that "the Board did not order disclosure of all of the information the union had requested," was held to be sufficient aggrievement to withstand transfer. 610 F.2d at 962.

■ The issue here is whether the imposition of mandatory bargaining in this case with regard to the withheld information renders the aggrievement insubstantial enough to warrant according no respect to a petitioner's choice of forum. We hold that it does not, *see* discussion *supra* pp. 20–21, and that the union's choice of this forum should be respected.

■ Finally, the "convenience of the parties in the interest of justice" is equally served by retention of these petitions in this court.[15] *Liquor Salesmen's Union* again defined the factors:

> In fleshing out the phrase "for the convenience of the parties in the interest of justice," the courts have considered the location of counsel, location of the parties, whether the impact of the litigation is local to one region, whether one circuit is more familiar with the same parties and issues or related issues than other courts, the caseloads of the respective courts, and whether there is but one truly aggrieved party.

664 F.2d at 1205. Both the NLRB and the union counsel are in the District of Columbia, and Colgate's firm has a Washington office. The particular plants and locals which spawned this litigation are admittedly not in the District, but the parties operate on a national scale, and the impact of the litigation goes far beyond the interests of one region. This is best evidenced by the fact that the Board itself consolidated these cases for decision, even though the plants involved were Kansas City, Missouri and

---

**15.** Our decision in *Public Service Commission, supra,* might be read to suggest that the "convenience of the parties in the interest of justice" is not a proper consideration once it is determined that the first-filing petitioner is substantially aggrieved, there were no instantaneous filings, and the case is not a follow-on to previous inter-related proceedings. *See* 472 F.2d at 1272. *But see Liquor Salesmen's Union,* 664 F.2d at 1205 & n. 6 (citing subsequent precedent of this court indicating that transfer remains discretionary with the court of first-filing). Moreover, the plain language of section 2112(a) itself indicates that the court of first-filing has the discretion to transfer on the strength of traditional venue considerations. In any case, we need not decide the limits of our power here, as the "convenience of the parties in the interest of justice" favors retention of these petitions in this circuit.

Fremont, California.[16] Congress has specifically "place[d] this court on a par with the courts of appeals for the circuits in which the alleged unfair labor practices occurred," *International Union of Electrical, Radio & Machine Workers,* 610 F.2d at 962, and the issues are undoubtedly of "national concern." *See Public Service Commission,* 472 F.2d at 1273.

Furthermore, there is currently pending in this court another petition for review of the NLRB's decision in the other case that was consolidated before the Board with the Colgate and Borden Chemical cases.[17] That decision, also issued April 9, 1982, involves substantially the same issues raised by the union's petitions for review of the Colgate and Borden Chemical decisions. There is also a Board petition for enforcement of that third decision pending here. As recognized by the Board in its consolidation order, these cases are best heard in a single proceeding in the interests of uniformity and judicial efficiency. *See International Union of Electrical, Radio and Machine Workers,* 610 F.2d at 964.

### III. Conclusion

In sum, there is no basis on which to negate the union's choice of forum in these cases. The union petitions were clearly filed first in this court, the petitions were neither premature nor invalid, and the union is a truly aggrieved party. The motions to transfer or dismiss are denied.

WILKEY, Circuit Judge, concurring:

The current law is well stated in the court's opinion. If the result is inequitable, this is a matter certainly within the power of Congress to change. Various venue proposals are now before the Congress.

---

**16.** The plants in the third case consolidated before the Board were in Minnesota. *See supra* note 4.

